### ALFORD *VS.* JOHNSON.

1. Where plaintiff's agent in attachment, declares on oath that defendant is indebted to plaintiff in a sum certain by note, and then sets out the note in *hæc verba*—it is sufficient.

2. The authority of the agent to execute a bond, must be questioned by plea to that effect, or it will be presumed by the court.

3. Plaintiff in attachment must be required to perfect a defective bond, and decline doing so, before proceedings will be quashed for such defect.

4. The act which requires process issued from the clerk's office of any court in this State, to be directed, "to any sheriff of the State of Alabama," &c., does not embrace attachments issued by justices of the peace.

5. Where an affidavit describes the plaintiff by the christian name of "Abraham," and in the bond and attachment he is called "Abram," the bond and attachment may be amended, to conform to the affidavit.

Error to Tuscaloosa Circuit court.

Attachment, tried by *P. Martin*, J.

The plaintiff in error, by his agent, N. B. Garner, on the eleventh December, eighteen hundred and thirty-seven, caused an attachment to be issued against the defendant, by a justice of the peace of Tuscaloosa, returna-

Alford *vs.* Johnson.

ble into the Circuit court of that county. At the term of that court, holden in March, eighteen hundred and thirty-nine, the defendant, by his attorney, moved the court to quash the attachment, for the insufficiency of the affidavit, bond and writ of attachment—which motion was granted, and judgment rendered against the plaintiff for costs.

This judgment is here assigned for error.

*Clark*, for plaintiff in error.
*Phelan*, contra.

COLLIER, C. J.—The record does not discover the specific grounds of the motion in the Circuit court; but the defendant's counsel, in his argument, has insisted that the judgment is legal—

1. Because the *affidavit* does not conform to the statute;

2. Because the bond is not well executed;

3. Because its condition is defective;

4. Because the writ of attachment is not properly directed; and

Lastly. Because there is a variance between the *affidavit, bond and process*.

1. It is objected to the *affidavit*, that the plaintiff does not swear that the defendant is indebted to him in a sum certain. This objection is not (in our opinion) well taken. The plaintiff's agent declares on oath, that the defendant " is justly indebted to the said Abraham Alford, in the sum of three thousand dollars, by a sealed note, of the tenor following"—and then sets it out in *hæc verba*.

9 P                    41

This mode of stating the defendant's indebtedness is equivalent to a direct affirmation, that he owed the plaintiff the sum expressed in the face of the specialty. The *affidavit*, in all other respects, conforms to the act of eighteen hundred and thirty-three, (Aik. Dig. s. 6, p. 38,) and has not been drawn in question.

2. Without pretending to determine whether, where a party sues out an attachment by an agent, &c. it is necessary that the bond should be executed by the agent, &c. as the *principal;* we think if this be necessary, that Garner may be so regarded. The bond is thus executed:

"ABRAHAM ALFORD, [seal.]

By his agent, *N. B. Garner.*

" N. B. GARNER, [seal.]

" J. CANTLEY, [seal.] "

Neither the bond or condition style either of the obligors as a principal or a surety, so that we might, if it were required in order to sustain the attachment, consider Garner as the principal, and the execution by Alford, through his agency, as surplusage. So, if the execution of the bond by Garner for Alford was unauthorised, it would impose no liability upon the latter, but the former would be personally responsible for having exceeded his authority.

Upon a motion to quash, we are to look alone to the face of the proceedings objected to, and if these be regular, the motion will be denied. Thus: if the bond should have been executed by the plaintiff, we will presume that Garner's authority was ample for that purpose—if it was not, the plaintiff might, by plea, have questioned the legality of his agency.

Alford *vs.* Johnson.

3. The sufficiency of the condition of the bond, must be determined by a reference to the attachment law of eighteen hundred and thirty-three, and not that of the twenty-third December, eighteen hundred and thirty-seven, as was supposed in argument; for the attachment was issued on the eleventh December, twelve days previous to the passage of the latter statute.

The 3d section of the act of eighteen hundred and thirty-three, requires that the bond shall be " conditioned that the plaintiff shall prosecute his or her attachment to effect, and pay the defendant all such damages as he or she may sustain, by the wrongful or vexatious suing out of such attachment." The 6th section prescribes the form of the *affidavit, bond, and attachment,* and the condition there found, is materially variant from the 3d section. Such part of it as concerns us at present, is in these words: "Now if the said ———— shall prosecute his suit with effect, or in case he fail therein, shall well and truly pay, and satisfy to the said ————, all such costs and damages as shall be recovered and awarded against the said ————, his heirs, executors or administrators, in any suit or suits, which may be hereafter brought for wrongfully suing out the said attachment, then the above obligation to be void; otherwise, to remain in full force and effect." There is a clear discrepancy between the bond required by the 3d section, and that, the form of which is given to the 6th section;—under the former, the surety would be liable for damages consequent upon the vexatious or wrongful suing out of the attachment, though the plaintiff might recover a judgment—while under the latter, he could be charged only, upon the fail-

ure of the plaintiff to prosecute his suit to effect. This state of things was discovered by the Legislature, and on the tenth January, eighteen hundred and thirty-five, an act was passed, which enacted "that from and after the passage of this act, no person shall sue out any original attachment, without giving security or securities to the bond required to be entered into, by the third section of the above entitled act, (act of 1833,) conditioned as provided for by said act, which security or securities shall be approved of by the judge or justice granting such attachment, and be subject to all the liabilities of the principal in said bond." Here, we see the Legislature did not pretend to interfere with the form of the bond, as before prescribed, but expressly re-adopt the condition, the form of which is furnished by the act of eighteen hundred and thirty-three, and inappropriate as it may seem, declare the legal effect of the bond, to be the imposition of a liability upon the surety beyond, and in some instances, in opposition to its terms: thus continued the law until the act of eighteen hundred and thirty-seven, already cited. The condition of the bond is subtantially, if not literally copied from the 6th section of the act of eighteen hundred and thirty-three, and consequently, is free from legal exception; but even conceding the bond to have been defective, the Circuit court was not warranted in quashing the proceedings, unless the plaintiff had declined, upon the requisition of the court, to perfect it by the substitution of a new bond—(Lowry vs. Stowe, 7 Porter's R. 486.)

4. The attachment is directed to the *sheriff*, as required by the act of eighteen hundred and thirty-three; and the

Alford *vs.* Johnson.

act of eighteen hundred and thirty-six, "to amend the laws regulating judicial proceedings," (pamphlet acts of 1836, p. 25,) which directs that "all original, *mesne* and final process, issued from the clerk's office of any court in this State, shall be directed "to any sheriff of the State of Alabama," &c.—applies in terms to the process of courts, of which clerks are necessary officers, and consequently, does not embrace attachments issued by justices of the peace.

5. The defendant insists, that there is such a variance between the affidavit, bond and attachment, as to have authorised the judgment of the Circuit court. The affidavit describes the plaintiff by the christian name of *Abraham*—in the bond he is called both *Abraham* and Abram—while the attachment is sued out in the name of *Abram*. We think if it were necessary, that the bond and attachment might have been amended so as to conform to the affidavit, and that the variance is not such as to sustain the judgment.

This view of the case brings us to the conclusion, that the judgment of the Circuit court is erroneous, and it is therefore reversed, and the case remanded.