MATTHEW CARTWRIGHT vs. LEON CHABERT — Writ of Error from San Augustine County.

The practice prevailing in the English and American courts, of permitting the amendment of defective writs so as to cure defects occasioned by mere clerical omissions or mistakes, is applicable here to citations. [1 Tex. 433; 5 Tex. 130; 7 Tex. 468; 9 Tex. 525; 11 Tex. 367; 16 Tex. 45.]

An omission or mistake in respect to the *seal* is as proper a subject for amendment as an omission or mistake in respect to any other essential requisite of a citation.

Where the defendant appears and pleads without objecting or excepting to the sufficiency of the process or the amendment of a citation, he will be deemed to have waived the objection.

After a misnomer pleaded in abatement, the plaintiff may correct the mistake by an amendment.

Amendments of the pleadings are addressed to the sound discretion of the courts in which the proceedings are pending.

The defendant in error, who was plaintiff below, instituted suit against the plaintiff in error, in September, 1846, upon several promissory notes.

The plaintiff sued by the name of Leon Chobert. In issuing the citation, the clerk omitted to affix to it the seal of the court.

At the first term (being the fall term, 1846), and on the 6th day of October, an attorney of the court, as "*amicus curiæ*," moved the court to quash the writ on account of the omission of the seal. On the same day the clerk filed, in writing, an application for permission to amend the citation, by affixing the seal of his office, *nunc pro tunc*, and gave notice of his application.

On the 8th of the same month a judgment by default was entered. On the 22d, the court acted upon the application to amend, and permitted the amendment, upon the payment of costs by the clerk; and, at the same time, ruled that the defendant should then be allowed to plead as fully as he might have done on the first day of the term. On the same day the defend-

ant appeared, and moved the court for a rule against the plaintiff for security for costs, and, at the same time, pleaded in abatement to the name of the plaintiff, alleging that his name was Chabert, and not Chobert, as alleged in the petition. He also filed exceptions to the petition, and a general denial.

At the next succeeding term the defendant moved to dismiss the cause for the want of security for costs. Security was given, and the cause continued " as upon affidavit of defendant." At the fall term, 1847, the plaintiff obtained leave to amend, and at the spring term thereafter (1848) filed an amendment to his petition in respect to the name of the plaintiff, substituting Chabert for Chobert, in conformity to the plea in abatement.

The plaintiff having, in his amended petition, so carelessly written the name of Chabert, that it appeared to the defendant to be written Chabon, he again pleaded in abatement to the name; whereupon the plaintiff again amended, giving his name conformably to the plea. The defendant objected to the amendment, and moved the court to reject it; but the court overruled the objection, and permitted the amendment upon the payment by the plaintiff of all costs. There were other proceedings not now material.

There was a verdict and judgment for the plaintiff for fifteen thousand, eight hundred and twelve dollars, seventeen cents; to reverse which the defendant prosecuted this writ of error.

J. P. HENDERSON, ARDREY and PAYNE for plaintiff in error.

T. J. JENNINGS for defendant in error.

Mr. Justice WHEELER, after stating the facts, delivered the opinion of the court.

For the plaintiff in error, it is insisted that the court erred in permitting the amendment:

1st. Of the writ.

2d. Of the petition.

1. The practice of permitting the amendment of defective writs, so as to cure defects occasioned by mere clerical omissions or mistakes, has very generally prevailed in both the English and American courts. [1 Chit. Pl. 283; 19 Wend. 99; 15 id.

304; 11 Verm. 331; 20 Pick. 38; 18 Wend. 675; 3 Ala. 250; 2 Smedes & Marsh. 307; 1 Hill, 204; 2 Brock. 13; 9 Porter, 320; 5 Smedes & Marsh. 259; 4 Cowen, 41; 5 Pick. 663; 5 Blackf. 374.]

It was recognized, as applicable to citations, by this court, in the case of Kavanaugh *vs.* Brown [1 Tex. Rep. 481]. The only question, therefore, which need now be considered is, as to the propriety of allowing this particular amendment.

We know of no rule of law, nor is it insisted that there is any principle or precedent, which forbids the amendment of an omission or mistake in respect to the seal, rather than in respect to any other essential requisite of a citation. And it would be difficult to assign any satisfactory reason why this particular defect should be especially incurable. The seal is an ingredient, in the formation of a citation, not more particularly defined and prescribed, or more certainly required by the statutes, than the *style* of the writ, the *teste* in the name of the clerk, the names of the parties to the suit, the time and place of holding the court, the date, and the signature of the clerk. [Acts 1846, 366, sec. 10.] And, indeed, it would seem that the omission of the seal would be less likely to mislead the defendant as to the essential facts, of which it is the object of the law that he shall be apprised by the citation, than almost any other one of these essential requisites prescribed by the statute. If, in respect to any of these requirements, the citation may be amended, why not also in respect to the seal? It does not seem elsewhere to have been considered that its omission, or misapplication even, was less the subject of amendment than other defects in the process. In New York, in a case where the seal, attached to a *certiorari*, was not the seal of the court out of which the writ issued, an amendment, by affixing the right seal, was allowed. [5 Wend. 103.]

In another case, a *venire* was permitted to be amended, by adding a seal and filing a sheriff's return thereto, *nunc pro tunc.* [4 Cowen, 550.] In Maine, in a case where the clerk had omitted to affix the seal of the court to an execution, it was held amendable, and was accordingly amended, even after

the execution had been extended on lands, and the extent recorded. [3 Greenl. 29.] In North Carolina, where sealing is necessary to the validity of all writs, it is held that the court has a discretionary power to permit an original writ to be amended by adding to it the seal of the court, where that had been omitted before the writ issued. [1 Iredell, 421.] And where the clerk had omitted to affix the seal to writs of *fi. fa.* and *venditioni exponas*, it was held that the court might, at a subsequent term, order the clerk to affix its seal to them, *nunc pro tunc.* [Id. 34.] In the case of Fleming *vs.* Powell, this court held that a sheriff's deed might be amended by the insertion of the words descriptive of a sealing, after the sheriff had gone out of office.

Instances of the allowance of similar amendments might be multiplied, but these will suffice to show that there is nothing in the mere fact of sealing, or in the nature of a seal, to prevent its omission from being the proper subject of amendment.

We have been referred, by counsel for the plaintiff in error, to the case of Frosh *vs.* Schlumpf, decided by this court at the last term. But that case has no application to the present inquiry. That was the case of a judgment by default. The citation neither had, nor purported to have, the authentication of a seal; and we decided that, being thus defective, it was not a legal and valid citation to support a judgment by default. No question of amendment was presented or considered.

But, in the case before us, the defendant appeared and pleaded without, in any way, objecting or excepting to the insufficiency of the process or the amendment of the citation; and, by so doing, he must be deemed to have waived the objection.

It has been expressly ruled, that though a writ, without the seal of the court issuing it, is not sufficient to compel the defendant to plead, or make any defense, yet an appearance on his part will waive the defect. [3 Pike, 450; 1 id. 50, 130; 7 Missouri R. 162; 1 Harr. 46; 1 Scam. 266; 4 Met. 386.] The principle, indeed, that an appearance and answer, without objection to the process, will waive the objection of a defect-

ive, or even void process, is too familiar to require the support of authorities.

2. As to the misnomer.

Numerous cases have been cited by counsel for the defendant in error, which show that it is the prevailing practice, both in the English and American courts, after a misnomer pleaded in abatement, to permit the plaintiff to correct the mistake by an amendment. [1 Chit. Pl. 281, 7th Am. from the 6th Lond. edit.; 7 Texas R. 698; 1 M. & Sel. 450.]

In Mestaer vs. Hertz (last cited), LE BLANC, J., said he saw no difference between an application to amend the name and to amend any other part of the declaration. It certainly would be quite difficult to point out any sensible distinction unfavorable to the former, when the mistake sought to be amended consists, as in this case, in the mere misspelling of the name in a single letter. It seems, also, to have been the opinion of Lord ELLENBOROUGH, in the case just cited, that the doctrine maintained in that case, allowing the amendment, was supported by precedent, and was, at least, as old as the time of Lord HARDWICKE. The practice seems, indeed, very generally to have prevailed, of allowing amendments respecting names and parties, where the mistakes thus corrected have been much more material, and the change effected by the amendment much greater than in the present instance. [2 Brock. 14; 10 Mass. 203; 7 id. 291; 13 id. 189; 15 Johns. 487; 3 Hanks. 80; 6 Yerger, 493; 5 N. Hamp. 573; 11 Mass. 338; 5 id. 99; 9 Porter, 320; 18 Pick. 57; 2 Martin (N. S.), 625; 9 Yerger, 64; 2 Iredell, 344; 12 N. Hamp. 493.] The supposed strictness of the common law against the admission of amendments appears not to have had its origin in the ancient common law, but in an ordinance of Edw. I., which forbade amendments. And there were some things amendable at the common law as it then stood. [1 Tom. Law Dict. 71.] But if it be conceded, as insisted, that the prevailing liberality, in allowing amendments, has had its foundation in particular statutes in England and the several states where it prevails, it cannot, we think, be doubted that our own legislation upon this subject was intended to introduce here a practice quite as

liberal, respecting amendments for the furtherance of justice, and the removal of objections merely technical and designed to defeat the truth and justice of the case, as that which prevails elsewhere, under the most liberal and beneficial statutes upon this subject. Our system of remedial justice evidently looks to its administration with as little regard to mere forms and fictions, and unmeaning technicalities, as that of any of our sister states. If we have had fewer and less comprehensive statutes of amendments than some of them, it has been only for the reason that there has been supposed to be less necessity for them, under the system of pleading and law of procedure practiced in our courts, than in those states where a system of rules more technical, arbitrary and inflexible had been early introduced.

There has been no tendency to unnecessary strictness in practice manifested here, to suggest the necessity of further legislation upon the subject. And were we now to give to our laws upon this subject a construction and application more restricted and rigid, and to adopt a practice here more technical, and less liberal, than that which at present prevails in the English and American courts, no one at all familiar with the spirit of our legislation can doubt that we should fail to carry out, in practice, its true spirit and intention. We should certainly depart from what has hitherto been regarded by the profession and the courts as the pervading genius and spirit of our system of remedial justice. We should, indeed, it may be apprehended, do something more than "hesitate to do right." As amendments are reducible to no certain rule, and as the cases in which they may be allowed are not susceptible of being anticipated and provided for by positive regulations, or of being comprehended within exact legal definitions, they must be, in a great measure, addressed to the sound discretion of the court in which the proceedings are pending. And when the statute has declared that "the pleadings in all suits may be amended under the direction of the court, and upon such terms as it may prescribe" [Acts 1846, 371, sec. 34], it may well be doubted whether it was the intention of the law that the discretion, thus conferred upon the district courts,

when exercised pursuant to the legislative intention in *permitting* amendments for the advancement of justice, should ever be the subject of revision here. It would be a different case should the court contravene the spirit of the law by *refusing* to allow a proper amendment. But where a discretion is thus broadly conferred, with but a single restriction, and that as to the time of amendment, it must at least be a strong case of the abuse of that discretion to require this court to revise its exercise by the court upon which it is thus expressly conferred. The present, certainly, is not such a case. The amendments in this case, on the contrary, seem fully authorized by precedent and authority, and to have been allowed not in a manner to deprive the defendant of any just defense, but with the design and effect of advancing the ends of substantial justice; not in derogation of any right of the defendant, but in entire accordance with the intention and true spirit of the law upon that subject, and the manifest and uncontroverted justice of the case. The defendant was not denied the right of pleading anew, had he seen proper to do so, any defense which he may have had. But it does not appear, nor is it pretended, that he offered to plead any other defense than those, the benefit of which was fully accorded to him in the court below, and which presented no barrier in law or justice to the right of the plaintiff to recover in this action.

We are of opinion that there is no error in the judgment, and that it be affirmed.