## J. N. WHITTENBERG v. J. W. LLOYD.

1. ATTACHMENT — AMENDMENTS. — After an attachment has been quashed for irregularity in its issuance, it is not error for the court to set aside the order quashing the writ, and to permit it to be amended by attaching thereto the proper seal of the court; nor to order that papers on which the attachment was issued, and which were properly filed, be indorsed *nunc pro tunc*, so as to correspond with the actual filing by the plaintiff in attachment.

2. HOMESTEAD. — The homestead exemption does not extend to lands obtained by exchange for an old homestead, where such old homestead had so far been abandoned that the family had been removed to land contracted for by parol, though not paid for, and though the means of payment of such newly-bought home were dependent upon realizing money from the old homestead; and that, too, although the exchange was made as a means of converting the old homestead into money, for the purpose of paying for the new home so contracted for, and when the owner insisted upon homestead rights in the old homestead and in the property obtained in exchange for it.

APPEAL from Ellis. Tried below before the Hon. A. Barksdale.

March 4, 1873, J. W. Lloyd brought suit, in the District

Court of Ellis county, for a balance due on a promissory note, against Joseph N. Whittenberg.

September 8, 1873, plaintiff obtained a writ of attachment, on the alleged ground that defendant was " about to transfer his property, for the purpose of defrauding his creditors." On same day, the attachment was levied upon lots 3 and 4, in block 18, in town of Waxahachie.

The writ of attachment did not have attached thereto the seal of the court, nor was the amended petition applying for the attachment indorsed filed at the issuance of the writ. It seems, however, that prior to the issuance of the attachment, and on the same day, (September 8, 1873,) plaintiff had in fact delivered the amended petition, the statutory affidavit, and bond to the clerk. September 12, plaintiff, having observed the omission to file, filed a motion asking that the papers be indorsed filed, as of " 8th September," *nunc pro tunc.*

This motion was overruled September 17, 1873, and the papers ordered to be indorsed as filed 12th September, the date of the motion.

May 22, 1874, defendant filed a motion to quash the writ of attachment, which, on 25th May, was sustained by the court.

May 26, plaintiff filed a motion asking leave for the clerk to amend the writ of attachment, by attaching thereto the proper seal of the court, which was, on same day, allowed, and the order to quash set aside and the attachment reinstated.

September 28, the order of court of 26th was so amended as to show " that said former order quashing said attachment be set aside, and that the clerk of this court impress the seal of the court on the writ of attachment, and correct the date of filing the amended petition, (to which was attached the affidavit,) making the same appear as filed 8th instead of the 12th day of September, 1873."

The defendant pleaded, in reconvention, that the lots levied

on under the attachment were his homestead, and alleged damages from its illegal seizure, &c.

The testimony showed that defendant had resided for a long time in Waxahachie, and had a homestead there, but, from his wife's illness, had been compelled to take her to Thorp's Springs, in Tarrant county, on account of her health; that his stay at the springs was protracted and necessary; that he discovered other springs in Tarrant county of like curative properties, and contracted verbally for the purchase of the tract of land on which they were situated, at $1,000, intending to remove thither and reside there permanently, and under said contract settled on said land; that in order to obtain means to purchase the place in Tarrant county he was under the necessity of disposing of his homestead in Waxahachie. The homestead being valuable, defendant was advised to trade for less expensive property in Waxahachie, thinking that a sale thereof could more easily be made, defendant receiving the difference in value. With this intention, and no other, defendant exchanged places with one Williams. The deeds of exchange were executed April 23, 1873. Before making the trade, defendant took legal advice from his physician and Williams, with whom he traded, who advised him that his homestead rights would not be affected by the trade, and that he could hold the lots obtained from Williams as homestead. Defendant never resided on the property obtained from Williams in the trade, but had the place leased to tenants for several months. Defendant's deed for the land in controversy, to a purchaser, was placed on record the day after the property was levied on under the attachment. Defendant only moved from Waxahachie to attend mineral springs for his wife's health, and continued, after trading with Williams, to assert from time to time his claim to the property traded for as his homestead.

In rebuttal, it was shown that defendant had contracted for the purchase of the Tarrant county mineral-springs place in January, 1873, and had been occupying it with his family,

the vendor refusing to execute and deliver paper title until the purchase-money should be paid; the vendor testifying also that the defendant bought of him expecting to pay from proceeds of his place in Waxahachie. The owner of the Tarrant county property had made out a deed to defendant, but would not deliver it until the purchase-money should be paid.

January, 1875, the case was tried without a jury, and judgment rendered for plaintiff for balance due on the note, and ordering the sale of the property attached. The defendant appealed, assigning error in the action of the court in permitting the writ of attachment to be amended and the judgment subjecting the lots levied on to sale under the attachment.

*A. Bradshaw*, for appellant.—Did Whittenberg abandon his homestead in Waxahachie? Here, too, the facts show there was no intention of abandonment, except in the event he could not sell this place and with the proceeds purchase the place in Tarrant. Before he can be held to have abandoned, the testimony must show not only the act, but the intention of abandonment, clearly and positively. In Gouhenant *v.* Cockrell, 20 Tex., 96, the court says: * * * "It must be undeniably clear, and beyond almost the shadow, at least all reasonable ground of dispute, that there has been a total abandonment, with an intention not to return and claim the exemption." (See, also, Shepherd *v.* Cassiday, 20 Tex., 25.) Did he lose his homestead right to his property in Waxahachie by making the trade with Williams? Or, rather, was the property gotten from Williams subject to the claim of creditors?

We insist that a man may sell his homestead for the purpose of applying the proceeds of the sale to the purchase of another, without subjecting the abandoned homestead to the claim of creditors. (Beach *v.* Epperson, 40 Tex., 162.) If such a sale may be made for cash, it may be made on a credit, without subjecting the old homestead to creditors' claims.

If such were not the case, what would be the protection to the family of an indigent man, who sells his old homestead on a credit, and purchases his new one on the same terms? It is evident, that if the money owing on the abandoned homestead, and which is the only fund out of which the new one is to be paid for, could be subjected to the claim of creditors, that the homestead would be lost entirely, since the vendor of the new homestead would be quite certain to foreclose his lien for the unpaid purchase-money. We are, therefore, led to the conclusion, that where a homestead is sold for the purpose of applying the proceeds of such sale to the purchase of another homestead, such proceeds, in whatever form they may be, are exempt from the claims of creditors; and especially is this so when such proceeds constitute the only fund out of which the purchase-money for the new homestead is to come.

If this view of the law be correct, how does this case appear under the facts as they were developed in evidence? Whittenberg's sole object in leaving Waxahachie is to acquire a home for his family, where his wife, a suffering invalid, may have the benefit of mineral water. He finds such a place in Tarrant county. To enable him to purchase that place, he must sell his old homestead in Waxahachie, in order to raise the means. That, it appears, was unsalable at the time, being worth more than purchasers then wished to invest in property in Waxahachie, and he is unable to sell it. It is suggested, that by trading it for a smaller place he may more readily find a purchaser, and the trade with Williams presents itself as a safe and speedy rescue from his dilemma. He makes the trade, receiving in exchange for his old place some money, which he greatly needed for the maintenance of his family; for his resources had been greatly straightened by the expense incurred in keeping his wife at Thorp's Springs; and the place is levied on by appellee. His sole object, purpose, and intention, as evidenced by his every word and act, has been to take the proceeds of the sale of his homestead in

Waxahachie and purchase a new one in Tarrant county. In other, and perhaps more correct words, his sole purpose has been to convert his old homestead in Waxahachie into a new one in Tarrant.

Now, both the money and the place attached constituted the proceeds of his old homestead, sold for the purpose of acquiring a new one, and the only fund out of which the new one is to be paid for; and if the money was exempt from the claims of purchasers, so was the place attached.

Again, the place attached, under the facts in the case, may still be considered his homestead at the time of the sale interrupted by the attachment, and its sale could not be a fraud on creditors.

*H. N. C. Davis* and *A. A. Kemble*, for appellee.

I. The only position assumed by appellant which we regard as of much importance is, that the property attached was the homestead of appellant and family at the time it was levied upon. This, if true, would certainly defeat the attachment, and the court would probably reverse and reform the judgment. But we hold that the facts do not show that the property was the homestead of appellant at that or any other time. There is no dispute about what the testimony proves; there is no conflict of evidence. The only question is one of law. And we hold they do not constitute the property attached a homestead—

1. Because property never occupied, nor intended to be occupied, by the owner as a homestead, does not and cannot acquire that character.

2. Because the appellant had acquired, improved, and was living on another homestead, in another county, at the time the attachment was levied.

3. Because if appellant ever did intend to occupy the premises as a homestead, he had abandoned that intention before the property was attached.

On the first proposition, we quote from 23 Texas, 498: "In

order to constitute a house a homestead, it is not sufficient that its owner used one of the rooms for his ordinary business, as keeping a grocery and sleeping in one of the rooms, and at the same time took his meals habitually at another place."

Thus, then, the house must be occupied, and not only so, but occupied as a homestead, and not for a different purpose. It must be his residence; where he lives, usually sleeps and eats, &c. Where the question, whether the property had ever been the homestead of the family, had been fairly submitted to the jury, and the verdict was against the homestead claim, the court refused to disturb the verdict. (Wright v. Hayes, 34 Tex., 261.) Then why disturb the judgment when the question was submitted to the judge instead of the jury, with the same result? (Cross v. Evarts, 28 Tex., 533; Miller v. Van Boskirk, 32 Tex., 360; Story on Confl. of Laws, sec. 47.) Every man must have a domicil somewhere, and can have but one. Appellant's domicil was in Dallas or Tarrant county all the time he owned the property attached, and could not have been in Waxahachie. If not in Waxahachie, it could not have been on his property, and the homestead rights could not attach. In Franklin v. Coffee, 18 Tex., 416, it is held that there must be preparation to improve and an intention to occupy. In this case there was a house already, but no intention to occupy.

II. Another homestead was acquired. We refer to authorities showing that a deed is not necessary, nor is anything necessary, to acquire a right to the land, where possession is taken by vendee, improvements made, and part of purchase-money paid. A verbal contract in such case would be good. (38 Tex., 109.) We think, however, the doctrine is well settled in our State, that possession and improvement under a parol contract of sale entitle the vendee in equity to a specific performance, on tender or payment of the purchase-money. (Schrimpf v. Settegast, 36 Tex., 305.)

Thus it will be seen that it was not necessary that appel-

lant should have received a deed for the land in Dallas or Tarrant county to acquire title and make it his homestead; but the contract (verbal) and improvements would be sufficient to force a title on payment of the purchase-money.

III. He never did intend to live upon the property attached, but did intend to live upon the land purchased at the mineral spring in Dallas or Tarrant county.

GOULD, ASSOCIATE JUSTICE.—Lloyd sued Whittenberg for a balance due on a promissory note, and afterwards, by amended petition, sued out an attachment, which was levied on two lots in the town of Waxahachie. Whittenberg moved to quash the attachment, one of the grounds being that the writ was not issued by the clerk in the manner prescribed by law. This motion was sustained, but, on the next day, the court, on motion of plaintiff, set aside the order sustaining it and quashing the attachment, and allowed the clerk to amend the writ of attachment by affixing thereto his official seal; also, to correct the date of the file-mark on the amended petition,—to which last orders defendant excepted.

The defendant filed various pleas by way of defense and in reconvention; but the only defense necessary to be noticed is, that the lots levied on were exempt from forced sale under the homestead exemption.

The cause was submitted to the court without a jury, and judgment was rendered for plaintiff for the balance due on the note, and for the enforcement of the lien on the property attached. Whittenberg appeals, and the errors assigned are, that the court allowed the writ of attachment to be amended, and that the judgment is erroneous, under the law and facts of the case. Other questions are discussed in the briefs of counsel on both sides, but it is not proposed to follow them outside of the errors assigned.

It was not error to allow the writ of attachment to be amended by the clerk affixing his seal thereto, even after the motion to quash the writ had been sustained. (Porter *v.*

Miller, 7 Tex., 482; May *v.* Ferrill, 22 Tex., 344; Cartwright *v.* Chabert, 3 Tex., 261; Drake on Attach., sec. 212.)

Appellant's claim, that the attached lots were exempt, comes up properly under the second and third assignments of error, and presents a question not free of difficulty. For many years he had owned and occupied a homestead in Waxahachie, but, on account of his wife's health, determined to remove to Tarrant county, and bargained verbally for a place there, expecting to pay for it out of the proceeds of his homestead, when sold, and so informing his vendor. He testifies that he found himself unable to sell his homestead, because of its value, and that for the purpose of effecting a sale, and being advised that he would not thereby lose his homestead rights in the proceeds, he exchanged it for the property attached, a place of less value, but more salable, receiving some ready money in exchange. At the time of the exchange, defendant below had removed from his homestead; but whilst he testifies that he claimed the place received in exchange as a homestead, he never occupied it, nor does he testify that he ever intended to occupy it. His intention was to sell it, and use the proceeds in paying for the place in Tarrant, bargained for and since occupied, and in part paid for; but he states that he is unable to complete the payment, and until he does can get no title.

The claim to exemption is mainly urged on the ground that the exchange was made for the purpose of selling the property received in exchange, and applying the proceeds to the payment for the homestead bargained for in Tarrant county; and it is insisted that the proceeds of the sale of a homestead remain exempt, if the intention be to invest them in the purchase of another. It is argued, and not without force, that the spirit and object of the homestead exemption require that the citizen be protected not only in exchanging one homestead for another, and in selling for cash and with the money buying another, but also in selling on a credit, or for unexempt property, with the purpose of using the pro-

41

ceeds to pay for another homestead; and certainly it would have been in the power of Whittenberg, who had, before he parted with his old homestead, bargained for another, to have secured to his vendor so much of the proceeds as was needed to complete the payment for the new homestead; but to the broad claim that the proceeds of the sale or exchange of a homestead shall be exempt, the answer is, that neither in the Constitution nor in any statute is provision made for such a case, and that if such an extension of the exemption be needed, it should come in the shape of additional legislation.

Where exempt property has been taken from the owner against his will, and its form changed by process of law, (as in case of a homestead exceeding in value the amount allowed,) the proceeds are protected until there is reasonable opportunity to reinvest in other exempt property. (Keyes v. Rines, 37 Vt., 260; Mitchell v. Millhoan, 11 Kan., 628; North v. Shearn, 15 Tex., 175; Paschal v. Cushman, 26 Tex., 75.) So, also, "insurance-money due on the destruction of the homestead by fire" has been held to be protected. (Houghton v. Lee, 50 Cal., 101; Smythe on Homestead, sec. 102.) On the other hand, it is held, that where exempt property has been voluntarily sold or exchanged, the proceeds are not exempt. (Edson v. Trask, 22 Vt., 18; Scott v. Brigham, 27 Vt., 561; Friedlander v. Mahoney, 31 Iowa, 315; Smythe on Homestead, secs. 99, 556.)

In Alabama, a different rule prevails; but it is by force of a statute. (Cook v. Baine, 37 Ala., 350.)

The case before us may be one of some hardship, but that is no sufficient reason for a departure from the rule sanctioned by authority, especially when the effect would be to leave the subject of homestead exemptions in a state of uncertainty well calculated to make it even more prolific in litigation than it now is.

The evidence failed to show that the property attached

was ever the homestead of appellant, or that it was in any way exempt from the attachment.

The judgment is affirmed.

AFFIRMED.