## H. SCHNEIDER & BRO. v. R. P. BRAY.

(Case No. 4775.)

1. HOMESTEAD.— The surviving husband or wife is entitled to the occupancy of the homestead, after the death, so long as such survivor may choose to occupy it; and occupancy thereof is expressly required only as against the right of the descendants of the deceased to have partition of the property.

2. FORCED SALE.— The reason for the general rule which subjects to forced sale property not exempt by statute, which has been received in voluntary exchange

1883.]                SCHNEIDER & BRO. v. BRAY.                669

───────────────────────────────────────────────────────────
                    Argument for the appellee.
───────────────────────────────────────────────────────────

· for other property which was exempt, is that the statute fixes the character of the exemption, and not the choice or caprice of the debtor.

3. SAME — HOMESTEAD.— If the property acquired by voluntary exchange of exempt property be, from its character or use, likewise exempt by the terms of the constitution or laws, it must receive the same protection from forced sale which shielded the property given in exchange for it. This rule applies to the acquisition by the widow, after the death of the husband, of a new homestead in exchange for the old one, even though there be no constituent of her own family for whose support she is liable, residing with her. Distinguished from Whittenberg v. Lloyd, 49. Tex., 633.

4. CASE DISCUSSED.— Wolfe v. Buckley, 52 Tex., 641, reviewed.

5. CONSTRUCTION OF HOMESTEAD LAWS.—Homestead laws are to be construed liberally, to give effect to their object.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

Edwin Bray and his wife, R. P. Bray, the appellee, owned as community property, and for many years occupied, a rural homestead of two hundred acres in Lamar county. Edwin, the husband, died, leaving appellee residing on that homestead. He left no other property, his estate was insolvent, and appellee· owned no other property in her own right or as community. J. H. L. Bray, their only child and son, was married, had a family, and lived elsewhere. Shortly after Edwin Bray's death, appellee conveyed one-half of the old homestead to another party, still retaining the other half, upon which was the residence and other homestead buildings and improvements. She continued to reside there until September, 1877, when she exchanged it for the house and lot in controversy, situated in the town of Blossom Prairie, in Lamar county, and immediately moved onto the latter place, where she afterwards resided. She invested the difference between the two places (some $500) in merchandise, and lost it. Afterwards appellant brought suit against her in the county court of Lamar county, and attached the lot in controversy, obtained a judgment and order of sale, had it sold by the sheriff, bought it in and took sheriff's deed, and then brought this action of trespass to try title against her.

*Dudley & McDonald*, for appellants, cited Taylor v. Boulware, 17 Tex., 74; Carter v. Randolph, 47 Tex., 376; Whitehead v. Nickelson, 48 Tex., 517; Kessler v. Draub, 52 Tex., 575; Wolfe v. Buckley, 52 Tex., 941; Rogers v. Ragland, 42 Tex., 422; Whittenberg v. Lloyd, 49 Tex., 633; Cameron v. Fay, 55 Tex., 58; Hunter v. Wooldert, 55 Tex., 433; Thompson on Homesteads, secs. 70, 72, 78.

*Hale & Scott*, for appellee, cited Carter v. Randolph, 47 Tex., 76; Shepherd v. Cassidy, 20 Tex., 29; Whittenberg v. Lloyd, 49 Tex., 640;

Cox v. Shropshire, 25 Tex., 113; Wood v. Chambers, 20 Tex., 254; Cameron v. Fay, 55 Tex., 58; Thompson on Homesteads, sec. 750; Houghton v. Lee, 50 Cal., 101.

WILLIE, CHIEF JUSTICE.— It is well settled in this state, that, independent of the provisions of the 16th article and 52d section of the constitution of 1876, the surviving husband or wife is entitled to hold the homestead after the death of the other spouse, so long as such survivor may choose to occupy it. Blum v. Gaines, 57 Tex., 119; Kessler v. Draub, 52 Tex., 574.

By the above cited section of our constitution occupancy is expressly required only as against the right of the descendants of the deceased husband or wife to have the property partitioned and their interests set apart to them.

In this case there is no question but that the appellee as surviving wife was entitled to the homestead occupied by herself and her deceased husband at the time of his death, so long as she chose to reside thereon; nor is there any controversy between herself and the descendants of her husband as to her exchange of it for another homestead. The controversy is between herself and her creditors, whose debts accrued subsequent to the exchange, as to her right to have the new residence exempted as against an attachment and execution sued out in satisfaction of such debts. The precise question thus raised is for the first time before this court for decision.

Exchanges made of exempt property for other property are classified by the books into two kinds, voluntary and involuntary; and, in reference to each of these, general principles are laid down which are generally concurred in by a majority of the American courts, where questions in reference to such exchanges have been raised.

In reference to the first class, it is held by several courts that where a debtor voluntarily exchanges property *specifically exempt* from execution for property *not exempt*, he cannot claim exemption for the property received in exchange. Thompson on Homesteads, § 745; Andrews v. Rowen, 28 How. Pr., 128; Freidlander v. Mahoney, 31 Iowa, 315; Scott v. Bingham, 27 Vt., 561; Edson v. Trask, 22 Vt., 18; Wygant v. Smith, 2 Lans., 185.

The reason of this general rule is well stated in the last case and is generally adopted and acted upon in the others. This is, in effect, that "the law designates the species of property it exempts, and does not allow the debtor to choose for himself in respect to the species or kind of property to be exempted. To allow this would be to substitute the choice of the debtor for the provisions of the stat-

ute.   When the exempt property is voluntarily sold and converted
into money, or other property *not also exempt,* the right is gone."
. The reason thus given for the rule proves the rule itself to be, that
if the property received in exchange is of the class or character not
exempt by law, it is subject to execution.   It also establishes the
converse principle, that if the property received in exchange is of
the species exempted by law, it will not be subject to execution for
the debts of its new owner.   This is illustrated by the cases cited
above in which the rule has been enforced.

In the case of Wygant *v.* Smith a soldier's bounty, which was ex-
empt, was exchanged for horses and harness, which were not exempt.

In Freidlander *v.* Mahoney, policies of insurance exempted by the
laws of Iowa were exchanged for merchandise subject to execution;
and so with the rest.

In all of which cases the unexempted property acquired in the
exchange was held liable to execution.

Applying this rule to the articles exempt by our own constitution,
should the horses, oxen, cows, furniture, farming utensils, tools of
trade, etc., exempted, be exchanged for money, merchandise, or the
like, the property thus acquired not being of the classes exempted
by our laws, would be subject to execution for the new owner's debts.
On the other hand, if horses, cows, furniture, etc., should be received
in exchange, not beyond the limit prescribed by law, they would not
be subject to such execution.   A man may exchange his horse for
another, or for five head of cattle, if he has none, or his tools of
trade for others that suit him better, and no one would think of
having such newly acquired property levied on under execution
against him.

Is the homestead any exception to the general rule on this subject?
And, if not, why may not a surviving wife, holding one by an un-
doubted right, exchange it for another and hold the latter exempt
from execution for her debts?

In making the exemptions our constitution and statutes selected
articles most certainly contributing to the ease, comfort and inde-
pendence of the family.   They allow the family a home and its
furniture; horses and cattle to labor for them and contribute to their
sustenance, and the tools of trade for the head of the family to use
in making a support.

Should any of these articles become useless, decayed, or not of so
much service as would others of the same species, the law does not
compel the owner to keep them, but he may exchange them for
others of more service to him.   Otherwise the beneficent effects of

the law would be in a great measure defeated. And so with the homestead. The houses may become untenantable and the owner unable to repair them or build others in their place. The land may be barren and the owner unable to make a living for himself or family upon it. He may find a place where he could pursue his trade or calling with profit which he cannot do at his then homestead. The law will certainly not prohibit him from exchanging his home for more comfortable quarters; his barren for productive land; or fasten him to a place where he must starve, under the penalty that, if he exchanges for the comfort and sustenance of himself and family, he shall sacrifice his home to creditors.

And so in the present case, we find a woman living all alone at a homestead, where she is separated from neighbors who could comfort and protect her in her loneliness, and where she can make nothing for her support, and must, if she depends on her own exertions, eventually starve, but who has an opportunity to exchange this rural homestead for one in a town, and receive in addition a small amount of money; who can probably make a livelihood in the town, and will at least have protection and society there. Is she not to be allowed to make such a desirable exchange? We do not think the law contemplated any such strict confinement to any particular home, provided the new one was within the limit of the exemption, as it was in this case. Creditors have lost nothing by it, for there is no more property withdrawn from their reach than there was before the exchange was made.

In cases of an involuntary exchange of property, the newly acquired article becomes exempt, whether it was of a class originally protected from exemption or not; as in a case where the exempt property is destroyed by fire, the insurance money received from it is exempt, whereas money received upon a voluntary sale would not be. And in such cases, it makes no difference whether the article destroyed be a piece of personalty or a dwelling house upon the homestead. Thompson on Home., § 784. This has been decided in our own state. See Cameron v. Fay, 55 Tex., 58.

Whilst our decision in this case is not put upon the ground that the exchange of homesteads was involuntary, it might not be considered an altogether voluntary act, where a woman in the situation of the appellee was compelled to make the exchange in order to secure a support which she could not possibly make at the homestead that she then occupied.

The decision of the court below did not, as appellants suppose, overrule any of the Texas cases cited in their brief.

The case of Whittenberg v. Lloyd, 49 Tex., 633, was made to turn upon the point that the lots in Waxahachie, exchanged for others in the same place, were not, at the time of the exchange, the homestead of the defendant, but had been previously stripped of their homestead character by abandonment. Besides, the property received in exchange was not a homestead either by residence or destination. If the court had intended to hold that the property received in exchange for a homestead was not exempt, there was no necessity for argument to show that the property exchanged was not a homestead. The statement made by the court, that it had been held that when exempt property has been voluntarily sold or exchanged the proceeds are not exempt, must be taken with the qualification attached to it by the very authorities cited to sustain the statement, viz., where the exchange is for articles *not in themselves exempt*, such as money, merchandise, etc.

So as to the expression that legislation will be required to sustain the broad doctrine that property received in exchange for exempted articles is itself exempt, evidently refers to property which is not in itself subject to execution, for that was the character of the property treated of by the court.

In Wolfe v. Buckley, 52 Tex., 641, the court would not have resorted to the fact that there had been an exchange of homesteads if it had actually considered Mrs. Buckley the head of a family, for that, in itself, would have exempted the property claimed as a homestead from execution; but the court evidently did not rely upon the claim that her step-grandchildren living with her constituted her the head of a family, and evidently laid great stress upon the fact that the place in controversy was bought with the proceeds of a former homestead.

It may be added, too, that if these children, whose father was living and bound for their support, constituted Mrs. Buckley the head of a family, there is no reason why the appellee's own grandchildren, whose father was living and who were residing with her at her urban residence (as the facts seem to indicate), should not have constituted her the head of a family and given exemption to the homestead, as in the case of Wolfe v. Buckley.

It may be added that so enlightened a court as that of Wisconsin holds that money due a debtor from the purchaser of his homestead as a part of the consideration therefor, and which the debtor designs in good faith to apply to the purchase of another homestead, is not liable to garnishment. Watkins v. Blatchinski, 40 Wis., 347. This was, of course, a voluntary exchange. The court, in deciding

the case, in referring to the decisions from Vermont and other New England states, dismisses them with the remark that the courts of those states generally hold to a strict construction of the exemption laws, whereas the Wisconsin courts have uniformly construed them liberally. The Texas courts have usually adopted the latter rule in their construction of such cases; and in the case of Whittenberg *v:* Lloyd, *supra,* intimated strongly in favor of the Wisconsin doctrine.

Mr. Thompson, too, in his work on Homesteads, § 751, in commenting upon the case, says: "The restriction of the rule to *involuntary* sales of exempt property has been denied in Wisconsin as it respects the homestead." He explains the decision by saying that in Wisconsin a debtor is empowered by statute to sell and convey his homestead without subjecting it to the demands of creditors; that this would be a barren right if the proceeds of the sale cannot be protected while in transition from one homestead to another. He admits that the view is calculated to promote the object of the homestead laws, and that it is applicable in states where a judgment lien does not attach to the homestead so as to prevent the owner and wife from alienating it. It is needless to say that this rule obtains in our own state. If the money in a transitive state is to be protected, much stronger is the reason for protecting the homestead acquired by a direct exchange.

For the purposes of this case it is sufficient to say that under all the facts to be found in the record we think the appellee's town homestead was protected from the levy of the attachment sued out by appellant, and the judgment below is affirmed.

AFFIRMED.

[Opinion delivered June 19, 1883.]