### L. & H. BLUM v. HANNAH M. LIGHT AND HUSBAND.

#### No. 6790.

1. **Homestead—Proceeds of Its Sale—Separate Property.**—Although upon the sale or exchange of the homestead the property thereby acquired becomes liable to execution, still if the wife's conveyance of the homestead be obtained upon the conveyance of property given for it to her separate estate, the property so conveyed is upon a valuable consideration and becomes her separate property, and is not subject to her husband's debts or the debts of the community.

2. **Wife may Buy on Credit and Acquire Title.**—A wife having a stock of cattle and needing horses to manage them contracted for such horses and paid for them out of her separate property. *Held*, that the horses became her separate property.

3. **Registration of Bill of Sale for Cattle.**—Husband and wife resided in Mason County, and a stock of cattle was conveyed to the separate estate of the wife, and was there registered. The parties moved the stock to Lipscomb County, taking with them the cattle. *Held*, a failure to register the bill of sale in Lipscomb County did not subject the cattle to levy under execution against the husband.

4. **Increase of Separate Property.**—While the calves of cows the separate property of the wife are community property, still a creditor of the husband can not by levying upon the cows obtain a lien upon the unborn calves, nor can he under execution hold the cattle until the calves may be appropriated.

5. **Immaterial Error in the Charge.**—An erroneous instruction will not vitiate a judgment on appeal unless shown to have produced actual or possible injury.

APPEAL from Lipscomb.  Tried below before Hon. Frank Willis. The opinion states the case.

*J. N. Browning,* for appellants.—1.  Personal property received in payment for the homestead of an insolvent debtor is subject to the payment of his debts; and the fact that the property so received was transferred to the wife to be her separate property upon the sole consideration of obtaining her consent to the sale of the homestead does not take such property out of the reach of the husband's creditors.  Whittenberg v. Lloyd, 49 Texas, 633; Darst v. Trammell, 27 Texas, 129; Baines v. Baker, 60 Texas, 139; Cox v. Shropshire, 25 Texas, 113; Ballew v. Casey, 9 S. W. Rep.,189; Haynes v. Kline (Iowa), 19 Cent. L. J., 317; Wygant v. Smith, 2 Lans., 185; Friedlander v. Mahoney, 31 Iowa, 311; Thomp. on Homesteads, secs. 745, 746; Freem. on Ex., sec. 235.

2.  All property bought on credit by or for the wife becomes common property of the husband and wife.  Rev. Stats., 2852; Epperson v. Jones, 65 Texas, 425; Cleveland v. Cole, 65 Texas, 402; Heidenheimer v. McKeen, 63 Texas, 229.

3.  The bill of sale from Brandenberger to Mrs. Light was void as to appellants, because the same was not recorded in Lipscomb County until over four months after the removal of the cattle from Mason County to Lipscomb County.  The charge requested was therefore applicable and should have been given to the jury.  Rev. Stats., art. 4341.

4.  Calves born of cattle the separate property of the wife are community property of the husband and wife, and subject to the claims of the husband's creditors.  Rev. Stats., arts. 2852, 2857; Howard v. York, 20 Texas, 670; Bateman v. Bateman, 25 Texas, 270; Cleveland v. Cole, 65 Texas, 402; Epperson v. Jones, 65 Texas, 425; Cox v. Miller, 54 Texas, 26.

*B. M. Baker,* for appellees.—1.  If a debtor owns property exempt unconditionally from forced sale, no conveyance of it can injure or defraud his creditors.  He may transfer it as he may deem best for the purpose of bettering his condition, and it would not be liable to execution in the hands of the purchaser.  Bump on Fraud. Conv., 3 ed., secs. 245, 246; Derby v. Meyrick, 8 Neb., 174; Monroe v. May, 9 Kans., 466.

2.  The refusal of a wife who in common with the husband owns a homestead to join in a conveyance of it except on condition that the proceeds are to be her separate property, to be used by her in purchasing

another home, is a consideration deemed valuable in law, and such a transaction can not injure or defraud the husband's creditors.   Ogden v. Giddings, 15 Texas, 485; Higgins v. Johnson, 20 Texas, 389.

3.   When property is once the separate property of the wife it remains so, no matter what changes or mutations it may undergo.   It is only necessary to trace it and identify it in its changed condition. Chapman v. Allen, 15 Texas, 278; Love v. Robertson, 7 Texas, 9, 10; Huston v. Curl, 8 Texas, 239; Rose v. Houston, 11 Texas, 323; Parker v. Nolan, 37 Texas, 86.

4.   When one has conveyance to chattels recorded in the county in which the purchase was made, it is not necessary for him if he removes the property to another county to record his conveyance in the county to which the property is removed; such is only necessary when he permits some other person to remove the property.   Rev. Stats., art. 4341.

GARRETT, PRESIDING JUDGE, *Section B.*—This suit was a trial of the right of property.   Appellants L. & H. Blum were judgment creditors of Leonard Light, the husband of the appellee Hannah M. Light, and caused an execution to be levied upon the property in controversy, consisting of cattle and horses, by the sheriff of Lipscomb County. Mrs. Light made claim in accordance with the statute.   The issues were tried before a jury, and on December 8, 1888, there was a verdict and judgment for the claimant.

The judgment in favor of the Blums was rendered by the District Court of Galveston County November 26, 1886, against L. B. French, M. G. Swan, and John B. Light as principals, and L. Light as surety, for the sum of $1282.82.   Executions were issued to Galveston, Mason, and Lipscomb Counties, all of which were returned by the several sheriffs "no property found."   On January 12, 1888, execution was issued to Lipscomb County and was levied on the property in controversy in this suit, about 300 head of cattle and ten horses, as shown by the return.   On March 10, 1888, Hannah M. Light presented to the sheriff her affidavit of claim to said property, and her bond for the trial of the right thereto.   These were filed in the District Court of Lipscomb County March 17, 1888.

Issues were submitted and the burden of proof lay with the claimant.   She alleged in substance that up to and prior to the 6th day of May, 1887, she and her husband owned and occupied a homestead in the town of Mason, Mason County, Texas, which was exempt from execution; that desiring to move from there, and having no property except said homestead, the said Hannah refused to part with her homestead rights or sign a deed to same unless the proceeds thereof were given to her to be her own separate property, and to be preserved by her for the purpose of investment in another homestead for herself and three children; that on said date appellees sold said homestead to one

Gottlieb Brandenberger, taking in payment for same the cattle and three of the horses involved in this suit, and that the same were transferred to her by said Brandenberger to be her own separate property, which was previously agreed to by her husband; that she signed the deed to the homestead solely upon that condition; that two of the horses levied upon were owned by her prior to her marriage with Leonard Light, and that five of the horses were bought by her with money advanced to her by her brother-in-law L. P. Badger, which money she afterward repaid. That no part of the property involved in this suit belonged to Leonard Light, but that the same was her sole and separate property; that she has not yet purchased another homestead; and that the value of the homestead sold by her and her husband to said Brandenberger still remains in the cattle and horses received for same and involved in this suit.

Appellants submitted their issues:

1. A general denial.

2. That the property was then and at the date of the sheriff's levy under plaintiffs' execution the common property of claimant and her husband Leonard Light (one of the defendants in plaintiffs' execution), and subject to the payment of his debts; that said Hannah had no separate right in said property; that if any transfer was ever in fact made to her for the same, that it was made without any consideration deemed valuable in law; that such transfer was made to her for the purpose of covering up the property, and thereby to hinder, delay, and defraud these plaintiffs and other creditors of said Leonard in the recovery of their said debts against him, and for that reason the pretended transfer was void in law as against plaintiffs, who were creditors of said Leonard prior to the said transfer.

It was admitted that the former homestead of appellees in Mason County was community property. Claimant and her husband were married in 1881. On May 6, 1887, appellees sold their homestead to Gottlieb Brandenberger. The consideration, as testified to by Brandenberger, was $3100 in cattle and a vendor's lien thereon amounting to $600. The recital in the deed is: "In consideration of the sum of $3100 paid by Gottlieb Brandenberger to Mrs. Hannah M. Light, in 336 head of cattle, the same being paid the said Hannah Light in consideration of her convey in (sic) the premises hereinafter mentioned, the same being her homestead, and the said 336 head of cattle conveyed and delivered to Mrs. Hannah M. Light to be and remain her sole and separate property."

A bill of sale was executed by Brandenberger to Mrs. Hannah M. Light for the cattle, dated the same day, reciting consideration, etc., in these terms: "For and in consideration of $3100 paid by Mrs. Hannah M. Light, of the county and State aforesaid, the same being paid by conveyance of her homestead in the town of Mason, Mason County,

Vol. LXXXI—27

Texas, to me, have this day and do by these presents convey and deliver to Mrs. Hannah M. Light as her sole and separate property the following described stock of cattle," etc.

From the evidence of Mrs. Light, her husband, and Evander Light, it appeared that Mrs. Light positively refused to sign the deed conveying the homestead unless the cattle and the three horses were given to her as her separate property. Light was in debt, and knew that if he sold his homestead for the cattle they could be taken for his debts under execution, and testified that he was not hard to persuade to give his consent to his wife's demands.

After the cattle and horses were received the claimant and her husband removed with them to Lipscomb County, arriving there in July, 1887. Mrs. Light stated that she would not have signed the deed to the homestead but for the agreement that the proceeds were to be her separate property; that at the time of the trial she and her husband lived in a "dug-out" on school land in Lipscomb County, and have not purchased another home. Before the sale was concluded the claimant consulted with her brother-in-law Evander Light, who was an attorney at law, "as to how she could become the owner of the proceeds of a sale of the homestead so that she could reinvest it in another home," and he advised her that "if she would make her consent to the sale conditioned that the proceeds should be given to her as her separate property, the property received would be her own." Brandenberger testified that he did not know to whom he made the bill of sale for the cattle.

It was in evidence that two of the ten horses in controversy were the property of Mrs. Light before her marriage with the defendant in execution; three of them were included in the bill of sale for the cattle, and the remaining five were bought for the claimant by her brother-in-law L. P. Badger, as they were about to start for Lipscomb County and needed them to drive the cattle with. They were agreed to be settled for out of the proceeds of the cattle and were so settled for.

The first question that arises grows out of appellants' first proposition under the fourth assignment of error relating to the charge of the court, which is that, "Personal property received in payment for the homestead of an insolvent debtor is subject to the payment of his debts; and the fact that the property so received was transferred to the wife to be her separate property upon the sole consideration of obtaining her consent to the sale of the homestead does not take such property out of the reach of the husband's creditors."

This involves two propositions, to the first of which, that the proceeds of the voluntary sale of a homestead which are not in themselves exempt are liable to execution, we assent. Although there are some expressions in the opinions in the cases of Schneider v. Bray, 59 Texas, 673, and Watkins v. Davis, 61 Texas, 414, which might indicate that

where there was an intention immediately to invest the proceeds in another homestead they would be exempt, it has since been definitively settled that such proceeds become subject to execution, and the rule as announced in the case of Whittenberg v. Lloyd, 49 Texas, 633, has been reaffirmed. Mann v. Kelsey, 71 Texas, 609; Kirby v. Giddings, 75 Texas, 679. But that the proceeds of the sale of a homestead which is community property conveyed to the separate use of the wife in consideration of her consenting to the sale and surrendering her rights of homestead would be subject to execution does not follow. Such a consideration may be valuable and adequate. Our law prohibits the husband from conveying the homestead unless he is joined in the deed of conveyance by the wife, acknowledged in such a manner as to show that she freely and voluntarily consents thereto. Her right of homestead is indeed valuable, no matter to what sort of a title it may attach. The wife is as fully protected in the use and occupation of a homestead on the separate land of her husband as she would be on land that belonged to the community estate or even to her in her separate right. As long as she chooses she can hold on to it, and whatever vicissitudes come she can keep the shelter of her home over her head. In the case of Giddings v. Ogden, 15 Texas, 485, Cox desired to sell the homestead; his wife objected unless a part of the proceeds were made payable to her; and in order to obtain her signature to the deed one of the purchase money notes was made so payable. On garnishment of the maker of the note for a community debt the court said that such an arrangement was recognized as being sustained on equitable principles; and though it was held that another homestead having been acquired the proceeds became liable, the principle was recognized that the note was designed as an indemnity to the wife for the loss of her homestead, to which she was entitled and fully protected by law in its enjoyment. In Gwyer v. Figgins, 37 Iowa, 517, Figgins and his wife had sold property which was their homestead, and in consideration thereof took the land in controversy and had it conveyed to Mrs. Figgins. The court held that the relinquishment by Mrs. Figgins of her homestead right by joining in the execution of the conveyance thereof was a good and valuable consideration, which in the absence of fraud was sufficient to support the conveyance to her of the land in controversy at least to the extent of the value of the homestead right, and that there was nothing in the case to show that the land exceeded that right. Many cases are cited by Bump in his work on Fraudulent Conveyances in support of the text that the release of a contingent right of dower is a valuable consideration. Fraudulent Conveyances, 310.

The husband may make a voluntary conveyance of the homestead to the wife and his creditors can not complain. It can be no fraud on his creditors to buy property and have it conveyed to the separate use of the wife if he exchanges therefor exempt property, unless it is done

for the purpose of abandoning the homestead and by an artifice or a trick of putting the proceeds out of the reach of creditors, while the real title and beneficial interest is still in the husband or the community. Darst v. Trammell, 27 Texas, 129. It is not a question of conveyance under the statute of frauds, but whether the bill of sale from Brandenberger to Hannah M. Light for the cattle was simulated and colorable, and was not intended by the parties that the title should pass to Mrs. Light, but merely to enable her to hold the property as the ostensible owner and in that way secure it to the husband as against his creditors. Baines v. Baker, 60 Texas, 140.

The testimony shows that Leonard Light, the husband, was in debt to appellants and others; that he desired to sell his homestead in Mason County and move to Lipscomb County. Mrs. Light was unwilling to sell unless the proceeds of the sale could be secured to her in some way so that she would have the means of obtaining another home for herself and children. She was advised that the proceeds of the homestead would be protected from the debts of her husband if conveyed to her in consideration of her relinquishment of her homestead rights to the Mason property. She then consented to join in the conveyance to Brandenberger, and the cattle and horses which were given in exchange for the homestead were conveyed to her separate use. They were given by Brandenberger in exchange for the land and improvements, but the husband parted with his title in them in consideration of the relinquishment by Mrs. Light of her homestead rights. If we view the transaction as a gift of the community interest of the husband to his wife it would be voluntary; but if we view it, as it was, as a conveyance procured by the husband to be made to the separate use of the wife in consideration of her relinquishment of her homestead right, it was on a valuable consideration and valid.

It is claimed by appellants that five of the horses were purchased on a credit and afterward paid for out of the proceeds of the cattle, and were consequently community property. From the evidence it clearly appears that these horses were also the separate property of Mrs. Light. When they were about to start for Lipscomb County with the cattle it became necessary to have more horses to use in driving them. L. P. Badger, the brother-in-law of Mrs. Light, furnished the horses, and she agreed at the time to pay for them out of the proceeds of the cattle, which was done after they reached Lipscomb County. This issue was properly submitted by the court to the jury with the other issues in the case, and although not in a separate paragraph of the charge the jury could not have failed to understand it.

Appellants asked an instruction, which was refused by the court, to the effect that if the jury believed from the evidence that the cattle were sold to Mrs. Light in Mason County, and that she and her husband were then living in said county, and that after the record of the

bill of sale from Brandenberger to Mrs. Light in that county the said Hannah Light permitted the cattle to be moved from Mason County to Lipscomb County and there kept and held for more than four months next before the levy of plaintiffs' execution without filing the bill of sale for record in Lipscomb County, and that plaintiffs levied without notice thereof, that the bill of sale was void and to find for the plaintiffs.

It was not error to refuse this charge, because the evidence showed conclusively that Mrs. Light and her husband accompanied the cattle to Lipscomb County. There was no evidence calling for the charge. Rev. Stats., art. 4341.

Calves born of cattle the separate property of the wife are community property of the husband and wife and are subject to the claims of the husband's creditors. But it was not error to refuse the charge asked by the appellants, because there was no evidence that any such calves were levied upon. The evidence showed that cattle of a given description were levied upon by the sheriff and that there were calves born after the levy of the writ. The cows were the separate property of Mrs. Light, and no lien thereon was acquired by the levy of a writ on them against her husband. If a lien had been acquired by the levy on cows with calf, it would have, as between the parties themselves, carried with it a lien on the calves after they were born. Darling v. Wilson, 49 Am. Rep., 305. But there being no title in the execution debtor to the cows, no lien could attach to the unborn calves in the wombs of the cows, though after birth they may become community property and subject to plaintiffs' execution. The reason for the lien on progeny, where there is a lien on the female, is that the incident follows the principal, so if there is no lien on the cow there can be none on the unborn calf. Jones on Chattel Mortgages, secs. 148–150. If Mrs. Light had been cast in the suit her claimant's bond would have required her to account for the increase of the cattle.

In the absence of a lien it is clear that a creditor can not seize the separate property of the wife and hold it until it becomes productive, and by his own wrong apply the product, which is community property, to his debt. Carr v. Tucker, 42 Texas, 330; Carlisle v. Sommer, 61 Texas, 127.

Appellants have assigned as error the sixth paragraph of the charge, which is as follows:

"6. If the sale of such homestead was made, however, and you should find that it was simulated and colorable merely, and made with the idea that Hannah M. Light should hold the proceeds for her husband after the sale of the homestead as a mere pretense and contrivance to protect the property from the claim of the creditors of Leonard Light, and not with the intention of acquiring a homestead with it, you will, if you so find, say by your verdict that the property acquired from such sale is subject to the levy."

Considered alone this charge was erroneous, because the intention of Mrs. Light and her husband to invest the proceeds of the homestead sold to Brandenberger in another homestead if the conveyance of the cattle to Mrs. Light was simulated and colorable merely, would not have protected them from appellants' execution. But looking to the entire charge and the evidence in the case, we find that the issue was made by the evidence and fairly presented by the court in its charge that the cattle were the separate property of Mrs. Light, and that the jury were not misled by the charge complained of. In the light of the charge already given, the only construction that the jury could have put on the words "and not with the intention of acquiring a homestead with it," was as negativing an agreement as testified to by Mrs. Light and others that the cattle were to be conveyed to her in her separate right, and that she had in good faith received the cattle with the purpose and intention as she had testified of acquiring another homestead for herself and children, which had been affirmatively and fully charged by the court in the fifth paragraph of its charge as the case upon which Mrs. Light could make good her claim to the property. It might have been that undue stress was laid upon the purpose for which Mrs. Light testified that she had required the property to be conveyed to her, but that could not affect the validity of the sale if there was a valuable consideration to support it and it was made in good faith, which we think is clearly shown by the evidence. An erroneous instruction will not vitiate a judgment unless shown to have produced actual or possible injury to the appellant. Loper v. Robinson, 54 Texas, 516.

We do not think it is necessary to discuss the other points raised by counsel in his brief. It is our opinion that the judgment of the court below ought to be affirmed, and we so report.

*Affirmed.*

Adopted June 16, 1891.

Associate Justice GAINES dissenting.