SUCCESSION OF JOHN C. NORTON ON THE OPPOSITION OF J. A. LUM.

The mortgage is accessory to a principal obligation, which it is designed to strengthen, and of which it is to secure the execution.

Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a principal debt to serve as a foundation for it.

Hence it happens, that, in all cases where the principal debt is extinguished, the mortgage disappears with it.

Hence, also, it happens that, when the principal obligation is void, the mortgage is likewise so: this, however, is to be understood with certain restrictions, which are established hereafter.

When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the two credits.

The rights granted the widow, or minor children of a deceased person, by the Homestead Act of 17th March, 1862, vest in them at the time of the death of the deceased, provided their condition of life at that moment of time entitle them to the benefit of the provisions of the Act; their pecuniary circumstances at the time of death of the insolvent, and not at any subsequent time, settles their right to any claim under the Act.

A widow or orphan must be a resident of the State at the time of the decease of the husband or father, in order to obtain the benefit of the Homestead Law.

APPEAL from the Second District Court of New Orleans, *Thomas, J. J. Magne*, for administrator. *J. L. Tissot*, for the widow.

*Geo. L. Bright, for Lum, appellant.*—The administrator filed an account and tableau of distribution. J. A. Lum made opposition thereto. The inferior Court maintained them, except that made to the items, "James. Timony, for $300 due him on the note of $2,000, bearing on both properties," and that to the "widow and children of the deceased John C. Norton, on their homestead claim, they being in necessitous circumstances, $1,000."

I. The item $300 is opposed, on the ground it is not due, and not a privileged debt.

It appears that the note for $2,000, upon which this balance is said to be due, was made on 17th September, 1861, and secured by an act of mortgage of the same date. This mortgage was made by the deceased in favor of James Timony. It does not appear that it was made for a consideration, neither does it contain an admission of indebtedness to the mortgagee; on the contrary, it expressly states that the "note is to be immediately discounted by said Timony."

*Timony* (made a witness) says he has not had the note all the time since the date of the mortgage. Since it was made and given to witness, part. of the time Norton had it in his possession. After the death of Norton, at the request of Mrs. Norton, he gave the note to a gentleman who furnished goods to Mrs. Norton, stating to that gentleman that there were only $300 dollars due to him on the note. He states Norton often paid accounts on said note to witness, different sums of money, for which he gave receipts. The last payment of $425 was paid by Mr. Norton.

It appears that the claimant, Timony, is the same person in whose favor the mortgage was originally made, without any consideration, but for the express purpose of having the note discounted. He appears in the act merely to complete the form, the acceptance of the mortgage. By his evidence, he afterwards surrendered the note to Norton, and,

NEW ORLEANS, JANUARY, 1866. 37

Succession of John C. Norton on the Opposition of J. A. Lum.

after Norton's death, after he is appointed administrator, we find him in possession of the note. He is unable to state what he gave Norton for the note. He says: "He does not recollect exactly what amount he got at the time Norton gave him the note." After Norton's death, at the request of Mrs. Norton, he surrenders the note to a creditor of Mrs. Norton to enable her to obtain credit.

. Surely he has acted as if he had no right to the note. The return of it to Norton, his appoinment of administrator, and then the possession of the note, are very suspicious circumstances, which are not removed by anything in the record, not even by his own testimony.

We think Mr. Timony is not entitled to the $300 claimed by him.

Admitting, however, that he is a creditor for $300, he has no mortgage.

Mortgage notes, issued by the maker, and coming again into his hands before maturity, are extinguished by confusion; his re-issue of them may bind him personally, but cannot revive the mortgage. C. C. 2214, 3252; *Hill* v. *Hill*, 4 R. 416.

II. The allowance of $1,000 to the widow and children of the deceased is opposed on the grounds that it is unauthorized by law; that the widow is not in necessitous circumstances; that, at the death of her husband, they resided in Mississippi. The residence of Norton and his wife, for several years, and, to the day of his death, was in Mississippi

The Judge of the inferior Court says, the evidence shows that, sometime prior to his death, being in bad health, he sold out and moved up into the State of Mississippi. The Court proceeds to state, it is not necessary to determine the question of domicile. The Court says: "It is not the date of the death, but of the settlement of the succession by which this question is governed. The widow is now a resident of this State, and is entitled to the protection of our homestead law. Were she still a resident of another State, it might be otherwise."

The argument is not good; for, if she be entitled to the benefit of the homestead law, she acquired her right at the instance of the death, which occurred in Mississippi, where she resided at the time, and she acquired the right by the laws of Louisiana. If she did not acquire it then, she could not possibly have acquired it at any other time. The right is the offspring of death. If it is not born then, it can never have any existence.

The argument of the inferior Court is that, at the time of the death of her husband in Mississippi, she had no right, but she acquired it by removal to New Orleans. In other words, it is not from the death the right is acquired, but from the removal. By such an argument, a widow might live in the State of Mississippi for years without any right by the laws of Louisiana, but, upon removing here, could disturb the settlement of a succession for the satisfaction of her claim.

The law, 1852, gives $1,000 to the widow in necessitous circumstances out of the estate of her husband. The law is intended to assist the destitute that the State has some obligations to assist. Louisiana is under no

obligation to provide a homestead to non-residents. It is entitled: "To provide a homestead for the widow and children of deceased persons." Can it be for widows and children of deceased persons who reside out of the State? In the language of Judge Lea, *Stewart* v. *His Creditors*, 12, An. 91: "It is the duty of the State to protect its own widows and orphans, and those of its own people who are laboring under legal incapacities. Upon what principle of public policy, or even of common justice, could the rights of mortgage creditors in this State be postponed to the claims of an interdicted person residing in France upon the property of his curator situated in this State, for an indebtedness growing out of an administration in that country?" In that case, Stewart made a surrender to his creditors. Stewart resided in Tampico, and his wife claimed a legal mortgage upon his real estate here, and her claim was rejected, on the ground that our system of legal and tacit mortgages did not extend to cases where the debt itself originated out of the State at a time when the debtor was also a non-resident. See, also, *Arnold* v. *McBride* 6 A. 703.

ILSLEY, J. Two of the items of the account and tableau of distribution filed by the administrator of the succession of John Cooper Norton, deceased, were opposed:

1. The item of three hundred dollars allowed to James Timony, as the balance of a note for two thousand dollars, subscribed by the deceased, and secured by a mortgage on certain real estate found in the succession.

2. The item of one thousand dollars allowed to the widow and children of the deceased, John Cooper Norton, as a homestead claim.

Both oppositions were dismissed, and the opponent, J. A. Lum, has taken the present appeal from the judgment of dismissal.

The grounds of opposition to the item of three hundred dollars allowed to Timony, are: first, that this claim is not due; and, second, that if it were due, the mortgage given to secure the payment of it has been extinguished. By reference to the act of mortgage we find no mention made of any indebtedness by the mortgagor to the mortgagee; but as the mortgage was given to the mortgagee expressly to secure the payment of the note of two thousand dollars, described in the act, we must infer that the principal debt was then due. It was stipulated in the act, that the note was to be immediately discounted by the mortgagee; but we infer from this nothing more than that the mortgagee would put it into the market for discount, in other words, that he was not expected to hold it himself till its maturity.

*Timony* himself, examined as a witness, says: "that he claims the three hundred dollars for *lent money*." He further says: "Norton often paid accounts on said note to him, for which he gave receipts, and that the last amount paid thereon was four hundred and twenty-five dollars."

In the first part of his examination, the witness says: "Since it (the note) was made and *given* to witness, part of the time, Norton had it in

his possession. This, unexplained, would certainly have extinguished the mortgage (2214, 3252; *Hill* v. *Hill*, 4 Rob. 416); but, in a subsequent part of his testimony he says, that the reason "Norton had the note in his possession for some time, was because, after it was executed, Norton fell sick, and witness did not see him for some time after, when he gave him the note, and that Norton never had possession of it afterwards. This possession of the note by Norton was not a possession in his own right, but for Timony; and as the debt was not thereby extinguished, the vitality of the mortgage to secure it was not impaired. Any disposition of the note made by Timony to assist the widow of the deceased has no bearing whatever on the case.

If the able counsel who examined *Timony* could not elicit from him stronger proof that he was not the owner of the note, it was, we presume, because he found the task a hopeless one.

We think that item was properly allowed.

The opposition to the second item must be sustained; for, admitting that the widow and children of John Cooper Norton were left in necessitous circumstances, and did not, in their own right, possess one thousand dollars, they were, at the time of Norton's death, domiciliated in the State of Mississippi ; and it was at the moment of Norton's death that their right, under the statute (if any they had, which cannot be conceded to them), would have vested. See the case of *Gimble* v. *Goode*, 13 An. 352.

The District Judge erred in supposing that "it is not the date of the death, but of the settlement of the succession, by which the question must be governed;" and the fact that Mrs. Nortion did, after her husband's death, fix her residence in Louisiana, does not, unfortunately for her, vest in her any right to claim the bounty.

Judge Lea thus expresses the opinion of the Court, in the case of *Stewart* v. *His Creditors*, 12 A. 91, and we concur fully in the applicability of the doctrine therein announced to the present case: "It is the duty of the State to protect its own widows and orphans, and those of its own people who are laboring under legal incapacities. Upon what principle of public policy, or even of common justice, could the rights of mortgage creditors in this State, be postponed to the claims of an interdicted person residing in France upon the property of his curator situated in this State, for an indebtedness growing out of an administration in that country ?" We are unanimously of the opinion that Mrs. Norton and her children cannot sustain their claim under the homestead law.

The judgment of the lower Court is sustained, so far as it rejects the opposition to the claim of James Timony, and reversed, so far as it sustains the claim of the widow and children of the deceased John Cooper Norton.

It is therefore ordered, adjudged and decreed, that the judgment on the opposition of J. A. Lum to the claim of James Timony be affirmed, at the costs of the appellant; and that the judgment on the opposition of J. A. Lum to the claim of the widow and children of John Cooper

Norton, under the homestead law, be annulled, avoided and reversed, and that the opposition thereto be sustained, at the cost of the succession.