HEWETT vs. ALLEN, Defendant, and CAMPBELL, Garnishee.

*March 15 — April 5, 1882.*

HOMESTEAD: *To whom exemption of proceeds applies.*

The statute (R. S., sec. 2983) which provides that the exemption of a debtor's homestead shall not be impaired by a sale thereof, but "shall extend to proceeds derived from such sale while held with the intention to procure another homestead therewith, for a period not exceeding two years," does not require, as a condition of such exemption, that the debtor shall continue to reside in this state during the two years, nor that he shall intend to procure another homestead in this state.

CASSODAY, J., dissents.

APPEAL from the Circuit Court for *Wood* County.

The plaintiff, having recovered judgment against the defendant *Allen*, and having issued execution thereon, proceeded by garnishment against *Campbell* in aid of his execution to reach a certain promissory note in his hands belonging to *Allen*. Both the defendant and the garnishee answered that the note was exempt from seizure on execution. Issue was taken on these answers. The issue was tried, and the circuit judge found as facts that the note was given as part of the price of *Allen's* homestead in Clark county, theretofore sold and conveyed by him to the maker of the note, and that he has always intended to procure another homestead with it; that two years had not elapsed since such sale and the making of the note; that *Allen* is the owner of the note; that shortly after such sale *Allen* removed to Minnesota, and resided there with his family when the garnishee action was commenced; and that he has not secured another homestead, nor fully decided where he will permanently reside. On these findings judgment in the garnishee action was ordered and entered against the plaintiff in due form. The plaintiff appealed from such judgment.

The cause was submitted for the appellant on the brief of *R. J. MacBride*.

For the respondents there was a brief by *Morrow & Masters*, and oral argument by *Mr. Morrow.*

LYON, J. The statute provides that the exemption of a homestead shall not be impaired by a sale thereof, but such exemption "shall extend to the proceeds derived from such sale, while held with the intention to procure another homestead therewith, for a period not exceeding two years." R. S. p. 783, sec. 2983.

The note being proceeds derived from the sale of the judgment debtor's homestead less than two years before the garnishee action was brought, and the same being held by him with the intention to procure another homestead therewith, the only question in the case is, Was his right to hold the same exempt from seizure defeated by the removal of the judgment debtor from the state? We think this question must be answered in the negative. The statute contains no such restriction. It exempts the proceeds of the sale of a homestead for two years, with the single condition that the same be held with the intention to procure another homestead therewith. This condition is complied with in the present case. It does not impose as a condition of the exemption that the grantor of the homestead shall continue to reside in this state, or that his intention must be to procure another homestead in this state. To hold that either of those conditions is implied in the statute would not only violate the liberal rule of construction of exemption laws in favor of the debtor which has always obtained in this state, but would be an interpolation of conditions and restrictions in the statute, which the legislature has not expressed, and, as we think, did not intend.

An argument against the view we have taken of the statute was presented by the learned counsel for the plaintiff, based upon the language of the same section (2983) which exempts a homestead "owned and occupied by any resident of this state." But we regard this provision merely as a restriction

upon the right to acquire a homestead, limiting the right to a resident of this state, and not as a limitation upon the exemption of the proceeds of the sale of a homestead when one has been acquired and afterwards sold. As before observed, any other construction would do violence to the language of the statute.

The rule of construction here adopted was sanctioned and applied by this court in *Lowe v. Stringham*, 14 Wis., 222.

The judgment must be affirmed.

Cassoday, J. I cheerfully concur in the liberal rule of construction so often given by this court to the laws of this state exempting property of those within its jurisdiction; but it does not follow that the same liberality should extend those laws so as to exempt the property of persons who are not in this state, but are citizens and residents of other states. It would seem that exemption laws, as well as all other laws of a state granting special benefits, are presumptively for those within the state, and not those who are citizens and permanent residents of other states.

In *Cope v. Doherty*, 4 Kay & Johns., 367, it was held that "*prima facie*, and unless the contrary be expressed, or be implied from the absolute necessity of the case, every legislature must be presumed to have intended by its enactments to regulate the rights which should subsist between its own subjects and not to affect the rights of foreigners, whether by way of restricting or augmenting their natural rights." To the same effect is *The Zollverein*, 1 Swab. Adm., 96; *Jefferys v. Boosey*, 4 H. L. Cas., 815. "It is conceded," said Marshall, C. J., "that the legislation of every country is territorial; that beyond its own territory it can only affect its own subjects as citizens." *Rose v. Himely*, 4 Cranch, 279. Mr. Story states the same rule thus: "It is plain that the laws of one country can have no intrinsic force, *proprio vigore*, except within the territorial limits and jurisdiction of that country. They can

bind only its own subjects, and others who are within its jurisdictional limits, and the latter only while they remain therein." Story's Confl. Laws, § 7. See also sections 20, 98, 278.

In *Finley v. Sly*, 44 Ind., 267, it was held that, " when an execution defendant ceases to be a resident householder of this state, his right to exempt any of his property from execution ceases, and property that may have been set off to him as exempt while such resident householder, may be seized and sold on execution." See *Norton v. Lum*, 18 La. Ann., 39; *Trawick v. Harris*, 8 Tex., 317.

Assuming that our exemption laws were enacted with reference to our own citizens and those within our own jurisdiction, and not those who are citizens and residents of other states, it would seem that the defendant *Allen*, being a resident and citizen of Minnesota, is not entitled to the note in question as exempt under our statute, unless the legislature have expressly or by necessary implication manifested an intent to exempt such property to citizens and residents of other states. Under our statute, a " homestead" is exempt by reason of its being " owned and occupied by " one who is a " *resident of this state.*" Section 2983, R. S. True, the same section interposes an exception to the extent that " such exemption shall not be impaired by *temporary removal* with the intention to reöccupy the same as a homestead, *nor by a sale thereof*, but *shall extend to the proceeds* derived from such sale, while held with the intention to procure another homestead therewith, for a period not exceeding two years." Certainly a removal from the state, not only with the intention of becoming a resident and citizen of another state, but actually becoming such resident and citizen, is entirely inconsistent with " temporary removal with the intention to reöccupy the same as a homestead." Besides, the express language of the statue is, " *such exemption* shall not be impaired," " but shall extend to the proceeds," etc. But· " *such exemption*,"

which is thus prevented from being "impaired," and thus
*extended*, is confined by the express language of the section
to a "resident of this state," and has no application, and, by
the rule of construction above given, can have no application,
to residents and citizens of other states. It is only "such
exemption" as is thus given to a "resident of this state,"
which is extended to the proceeds derived from the sale of the
homestead for the period of two years, provided they are held
for that length of time, "with the intention of procuring an-
other homestead therewith." The sole purpose of this exemp-
tion is to secure homesteads in this state, and not to secure
homesteads in other states, to persons who are citizens and
residents of such states. *Allen*, having become a resident
and citizen of Minnesota, became entitled to the benefits of
the exemption laws of that state. As such resident of Min-
nesota he could hold as exempt a homestead of not exceeding
eighty acres of land in the country, or a lot in a city or village,
and the dwelling-house thereon and its appurtenances. Sec-
tion 1, ch. 68, R. S. of Minn. He could also hold as exempt,
under the statute of that state, a very liberal supply of per-
sonal property. Sec. 310, ch. 66, id. It is true, the court
found that he had not in fact secured another homestead, nor
fully decided where he would permanently reside; but, as he
had voted in that state, it would seem that he should be
regarded as a citizen and necessarily a resident of that state.
To test the question, suppose he had sold a considerable
amount of land and other property in Wisconsin which was
not exempt, and with the proceeds purchased eighty acres of
land and other property in Minnesota, which he occupied and
held as exempt under the laws of that state: would it still be
held that he might, in addition, hold the proceeds of his Wis-
consin homestead exempt for the period of two years, and until
he should fully decide where he would permanently reside? If
not, then why not, if the decision of this case is correct? Is
the question of the exemption of the note here involved de-

pendent upon the investment or non-investment of the avails of other property, instead of the fact as to whether the debtor had or had not actually changed his residence and citizenship? If it is, then it would seem to be entirely immaterial whether the debtor ever had been a resident of this state or not. If, however, it is dependent upon the fact of residence and citizenship at the time the suit was commenced, then, as the debtor was, upon the admitted facts, entitled to the benefit of the exemption laws of Minnesota, it follows that he could not at the same time be entitled to the benefit of the exemption laws of Wisconsin, unless it be held that a person with a fixed residence and citizenship is not only entitled to benefits of the exemption laws of the state in which he resides, but also of the state in which he has ceased to reside. It would seem that a construction should not be indulged which would give to a migrating individual the benefit of the exemption laws of two different states *at the same time,* while permanent residents could only have the benefit of one. The fact of the debtor not being a resident of this state (subd. 5, sec. 2731, R. S.) of itself entitled the plaintiff to an attachment against his property here; and yet it could be of no avail in this case, if a non-resident debtor may invoke the benefit of our exemption laws for two years after he has ceased to be a resident of this state and become a citizen of another state.

In *Yelverton v. Burton,* 26 Pa. St., 354, WOODWARD, J., giving the opinion of the court, said: "But debtors subject to foreign attachment are no more within the spirit of the exemption law . . . than they are within its letter. We do not legislate for men *beyond our jurisdiction,* and certainly not for absconding debtors; but the act . . . was designed for *our own citizens* — for the families of the poor who are *with us,* — that the rapacity of creditors might not strip them of every comfort and convenience. The primary object of the process of foreign attachment is to compel the appearance of the debtor; and if it fail of this purpose — if he will not come within our

jurisdiction to answer to his liabilities,—let him not come to appropriate our bounties." This language is quoted with approval in *Orr v. Box*, 22 Minn., 485, where it was held that "an absconding debtor who has departed the state without any intention of returning, and becomes a resident of another jurisdiction, cannot avail himself of the benefits of our exemption laws in respect to personal property left behind him, and subsequently seized and sold upon execution."

I am not aware of any case where this court has heretofore held that a resident and citizen of another state is entitled to the benefit of the exemption laws of this state.

In *Lowe v. Stringham*, 14 Wis., 222, the claimant of the wheat was a "temporary resident," and it was held that the statute makes no discrimination "between temporary and permanent residents." What was said in that case by Mr. Justice PAINE about "the temporary *sojourner*, or even the stranger within our gates," was clearly *obiter;* but even that, as I think, does not authorize the inference of a willingness on his part to give residents and citizens of other states the benefit of the exemption laws of this state. But, however that may be, one of the first acts passed at the next session of the legislature after that decision, was chapter 11, Laws of 1862, limiting the exemption of the class of personal property referred to in *Lowe v. Stringham*, and all other personal property (except such as pertained to the household, wearing apparel, a place of worship, and burial of the dead), "to debtors having an actual residence in this state." That limitation has not only been preserved, but extended from four subdivisions of the section to ten subdivisions. See last part of section 2982, R. S., p. 783. Prior to the act of 1862, as intimated by Mr. Justice PAINE, the statute exempting personal property was silent as to residence, but the implication arising from the rules of construction indicated by the above authorities made it applicable only to those who were within the jurisdiction of the state. Of course, when the legislature expressly limited cer-

Hewett vs. Allen, Defendant, and Campbell, Garnishee.

tain classes of personal property to actual residents of the state, it thereby raised a counter implication that the other classes of personal property not so limited were exempt, without reference to the question of residence. But in the statute exempting homesteads it was never left to implication; for there it has always been expressly confined to lands owned and occupied by a "*resident of the state*," and it was only "such exemption" that was "extended" to the "proceeds" derived from the sale of the homestead. While the statute protects a "resident of the state" in the ownership of such proceeds "for a period of not exceeding two years," yet, in my judgment, it does not continue such protection after such owner has ceased to be such a resident of this state, and actually becomes a resident and citizen of another state; and to give to the statute that effect by construction, is to interpolate into it words of such import. The inequality of exempting large sums of money, even to residents of the state, for a period of two years, merely because they were once so fortunate as to own a homestead, and yet affording no protection of an equal amount to those who are desirous of buying one, is apparent; but to extend such protection to residents and citizens of other states seems to be unjust, not only to resident creditors, but to that large class of citizens who, from the rapacity of creditors or otherwise, have never been able to accumulate and hold as exempt a sufficient amount of money with which to buy a homestead in the first instance.

For the reasons given, I prefer to have my associates take the responsibility of the decision of the court in this case.

*By the Court.*— Judgment affirmed.