HUGHES v. NEWTON.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1898.)

No. 482.

HOMESTEAD—EVIDENCE OF ABANDONMENT.

The owner of a homestead left it on account of ill health, and for 13 years before his death traveled and resided in a number of different places, leasing the hotel on the homestead property, but reserving a room therein for the use of himself and his wife, to which he frequently returned, and in which he kept his own furniture. He never purchased a home elsewhere, nor engaged in any permanent business. The only direct evidence of abandonment was a casual statement, made at one time, that he was then making his home at a different place; but a number of statements that he considered the hotel as his home were shown. *Held*, that the evidence was insufficient to show an abandonment.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

This is a suit in equity, brought by the complainant, Robert P. Hughes, against the defendant, Mary F. Newton, seeking to recover a decree for the amount due upon three promissory notes executed by William Newton, deceased, and the defendant, his then wife, and to charge the same as a specific lien upon certain real estate, less than one-fourth of an acre, known as the "Eau Claire House property," situated in the city of Eau Claire, Wis., and to have said real estate sold, and the proceeds applied to the payment of the amount found to be due upon said notes. The bill makes the notes a part of the complaint, and thereby shows that each of them was secured by a first mortgage upon property situated in Ramsey county, Minn. The bill alleges the death of William Newton; that he had devised his real and personal property to his wife; that the will was probated in the county court of Eau Claire county, Wis., and that the defendant qualified as executor thereof; that the deceased left no other real property in the state of Wis-

consin except that sought to be charged, and no personal property except certain exempt household goods, worth about $75; that no order had ever been made by the county court of Eau Claire county, which is a court having probate jurisdiction, limiting the time within which creditors should file their claims against said estate, or fixing a time for hearing such claims, and that no notice was given to creditors requiring them to file their claims; that the defendant is, and since June 2, 1896, has been, in possession of said property by tenants, and has received the rents therefrom; that said property is of the value of $25,000; that the deceased left no other property except said real estate out of which the indebtedness due to complainant can be realized, and that the defendant has no other property than said real estate; that though she is not in actual possession of the land, and the same is not actually the homestead of the defendant, yet she threatens to, and will, if an action at law is brought against her, before a final judgment can be obtained, enter into the occupancy thereof as her homestead, and will claim and hold the same as her exempt homestead, free from the lien of said judgment, and therefore an action at law would be unavailing. The defendant, in her answer, claims by way of defense: First, that the property sought to be charged was at the time of his death the homestead of the deceased, William Newton, and his estate is, by the statutes of the state of Wisconsin, exempt from the claims of his creditors; second, that it had been conclusively so adjudged by the county court of Eau Claire county having jurisdiction of the estate of the deceased situated in the state of Wisconsin; third, that the claim of the complainant against the estate of the deceased had been barred by his failure to collect the same from the deceased in his lifetime, or to make proof of his claim against the estate, and procure an allowance thereof by the county court before the settlement of the estate and the distribution of the property, and before the defendant had made lasting and valuable improvements thereon, which she alleges she has made at a cost in excess of the value of her equity therein; fourth, that the complainant is not entitled to maintain a suit in equity upon his claim, because he has an adequate remedy at law, and, further, that he has not exhausted the property pledged for the payment of this debt; fifth, that the defendant had, at the time the notes were made, no separate estate, and was not bound in law to pay these notes which she had signed with her husband. The defendant claims the same benefit of exception to the bill as though she had demurred to the same. The court below, on final hearing, dismissed the bill for want of equity. In its opinion, which appears in the record, the court held that the property sought to be charged was, at the time of his death, the homestead of William Newton, and as such was by the statutes of the state of Wisconsin exempt from the claims of creditors. The court further held that the laches of the claimant in failing to prosecute his claim against the deceased in his lifetime, or against his estate pending its settlement and distribution in the county court, precluded him from maintaining his present suit. The other facts of the case appear in the opinion of the court.

James F. Markham, for appellant.

W. P. Bartlett, for appellee.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

After making the foregoing statement, the opinion of the court was delivered by BAKER, District Judge.

It may well be doubted whether the complainant is entitled to any relief on the case made by his bill. The bill discloses that the notes are secured by a mortgage upon property in Ramsey county, Minn. The failure to proceed against this property for the satisfaction of the debt is insisted upon in the answer as a ground of defense. The bill shows no excuse for the failure to foreclose the mortgage; nor

did the complainant, after the answer was filed, ask or obtain leave to amend his bill so as to show an excuse for such failure. For aught that appears in the bill, the complainant could have satisfied his debt by the foreclosure and sale of the mortgaged property. "The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even when there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its exercise the debt must be clear and undisputed, and there must exist some special circumstances requiring the interposition of the court to obtain possession of and apply the property." Board of Public Works v. Columbia College, 17 Wall. 521, 530; Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583. A person holding a pledge or conveyance of property sufficient in value to satisfy his debt cannot abandon or waive the enforcement of such lien, and obtain a decree in equity charging such debt as a specific lien on other property of the debtor, without his consent. Without any amendment of the bill, and apparently without any objection, the parties took proof in reference to the value of the mortgaged property. It was shown that upon a foreclosure and sale of the property there ought to have been realized at least $900 applicable to the complainant's debt. The only reason suggested why the present bill ought to be maintained is that the mortgaged property would prove insufficient to satisfy the entire indebtedness. This, however, does not seem to be a sufficient excuse for a failure to exhaust the property pledged for the payment of the debt. In Board of Public Works v. Columbia College, supra, the court says: "In all cases we believe property pledged or conveyed for the payment of a debt must be first applied." It would seem to be certain that some excuse other than the mere insufficiency of the mortgaged property to satisfy the whole debt ought to be shown to justify the maintenance of a bill to charge other property of the debtor with a specific lien for the satisfaction of such debt. We do not care, however, to dispose of the case on this ground, but prefer to place our decision on the ground that the property sought to be charged was at the time of his death the homestead of William Newton, and as such is, by the statutes of the state of Wisconsin, exempt from the claims of his creditors. The statute of Wisconsin was enacted in obedience to a mandate of the constitution declaring that the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws exempting a reasonable amount of property from seizure or sale for the payment of any debts or liability hereafter contracted. The statute enacted to carry into effect this constitutional requirement now in force is section 2983, Rev. St. Wis., and is as follows:

"A homestead, to be selected by the owner thereof, consisting, when not included in any city or village, of any quantity of land not exceeding forty acres, used for agricultural purposes, and when included in any city or village, of any quantity of land not exceeding one-fourth of an acre and the dwelling house thereon and its appurtenances, owned and occupied by any resident of this state, shall be exempt from seizure or sale on execution from the lien of every judgment, and from liability in any form for the debts of such owner, except laborers', mechanics', and purchase money liens, and mortgages lawfully executed, and taxes lawfully assessed, and except as

otherwise specially provided in these statutes; and such exemption shall not be impaired by temporary removal with the intention to re-occupy the same as a homestead, nor by a sale thereof, but shall extend to the proceeds derived from such sale while held with the intention to procure another homestead therewith, for a period not exceeding two years. Such exemption shall extend to land, not exceeding altogether the amount aforesaid, owned by husband and wife jointly, or in common, and to the interest therein of a tenant in common, or two or more tenants in common, having a homestead thereon, with the consent, expressed or implied, of the co-tenants, and to any estate less than a fee held by any person by lease or otherwise."

This statute has always been liberally construed in favor of the debtor, to secure the humane purpose of the framers of the constitution. The evidence shows that the deceased, William Newton, in 1864 owned and began to occupy the property sought to be charged, commonly known as the "Eau Claire House," consisting of two lots in the city of Eau Claire, Wis., and being less than one-fourth of an acre in extent, as his homestead, and that he continued to occupy it as such with his wife and family for about 18 or 19 years. During his lifetime he never thereafter acquired or claimed any other place as a homestead in Wisconsin or elsewhere. About the year 1882 his health failed, and, acting under the advice of his physician, he rented his homestead to Charles Foster, his son-in-law, and went away for the benefit of his health. The evidence shows that he had asthma, from which he suffered until his death, and that any change, even for a short distance, produced a beneficial effect. He went to many different places, remaining temporarily for various periods of time. The evidence fails to show that any one of these changes was made with the intention of abandoning his old home and acquiring a new one, but they were made solely with the purpose of obtaining relief from his malady by a change of air and locality. He went to the Southern States, and also to Spooner and La Crosse, Wis., to Colorado, and to England, and finally, about the year 1889 or 1890, he went to St. Paul, Minn., where he had a son and a son-in-law living, engaged in the clothing business. He remained there until 1893 when he went to New Richmond, Wis. The complainant contends that he acquired a home in St. Paul, and thereby lost the right to claim the Eau Claire House as his homestead. It appears that during his residence in St. Paul he was for a short time interested with his son-in-law in the clothing business, and that he rented and occupied with his wife three different houses. The business interest which he had was of a temporary character, and the houses occupied by him were rented as temporary places of abode, and not for occupancy as a permanent home. He never acquired any home of his own during his residence in that city. While in St. Paul he returned to Eau Claire as often as once a month, and stayed there frequently for a week at a time. As evidence of his intention to retain the property at Eau Claire as his homestead, as early as 1890, when leasing it to its present proprietor, Robert Parkinson, he reserved a room in the hotel for the occupancy of himself and wife. The reservation consisted of "room 51, to be occupied by him and his wife as their residence and home at all times during the continuance of this lease," which had not expired at the time of his death. The furniture of the deceased was kept in this

room. One witness (Darius Brasee) testifies to an isolated statement made by the deceased in 1888 to the effect that he had gone to St. Paul, and that he expected to make that his home; that he was making it his home. Such an isolated statement, if accurately remembered and truly stated by the witness, ought not to outweigh the acts and repeated countervailing declarations testified to by other witnesses. It is apparent that the conversation was a casual one, and nothing is stated by the witness to show that it occurred under such circumstances as to make a deep and lasting impression on his mind. In view of the fact that William Newton is dead, and the court is thus deprived of his explanation, it is manifest that the testimony of this witness ought not to be given such weight as to overthrow the homestead claim of the deceased. The failure of the deceased to acquire a homestead elsewhere, the fact that he went from place to place for the benefit of his health, the solemn reservation of a home in his leases of the property, his frequent return to and occupancy of his room in the old home, his repeated declarations made at times when no intervening occurrence suggested a motive for deception, all concur in demonstrating that his absence was temporary, and was accompanied with the fixed intention of returning. His daughter testifies that travel was beneficial to her father's health; that he came to Eau Claire in 1894, and stayed with her some of the time, but most of the time he stopped at the hotel; that he always called the Eau Claire House home, and wanted to be there when he could; that his health was poor, and that in his last illness he was talking of coming back to Eau Claire to his home, and that he had no other residence except the Eau Claire House that he called his home; that when he went to St. Paul he said that he should not stay there long, but would come back to Eau Claire; that he died at New Richmond, in April, 1895, and was brought to Eau Claire, and buried in his own lot in the cemetery there.

Under these circumstances it seems apparent to us that he never abandoned his homestead, and that the defendant is entitled to hold it as exempt from the claims of her husband's creditors. The following cases, which we have examined, fully sustain this homestead right: Phelps v. Rooney, 9 Wis. 70; Zimmer v. Pauley, 51 Wis. 282, 8 N. W. 219; Hewett v. Allen, 54 Wis. 583, 12 N. W. 45; Schofield v. Hopkins, 61 Wis. 370, 21 N. W. 259; Comstock v. Bechtel, 63 Wis. 656, 24 N. W. 465; Phillips v. Root, 68 Wis. 128, 31 N. W. 712; McDermott v. Kernan, 72 Wis. 268, 39 N. W. 537; Brettun v. Fox, 100 Mass. 234. It would be difficult to distinguish this case in its facts from that of McDermott v. Kernan, supra. There a widow, who lived in the second story of a building, the first story of which was used as a saloon and dancing hall, not wishing her children to live over a saloon, removed from the building to another place of residence. She left some furniture in the building, and always intended to return and live in it; at all events, when her children were grown, and her daughters married. In the meantime she rented the building, and about seven years after her removal she executed an absolute deed of the premises as security for borrowed money. It was held that her right to claim the premises as her homestead was not

impaired by her absence, and that she could hold the same as exempt from sale on execution.    In Brettun v. Fox, supra, it was held that a widow who continued to use, for the purpose of storing furniture, after her husband's death, a room in a dwelling house occupied and owned by him at the time of his death as a homestead, continued to occupy the homestead within the meaning of the statute.    It was said by the court that the use of the room for the purpose of keeping her furniture was "continuing to occupy the homestead."

We have carefully examined the case of Jarvais v. Moe, 38 Wis. 440, cited and relied upon by the complainant, and find nothing in conflict with the conclusion here reached.    The court there said:

"The statute does not limit the measure of removal, but it does the kind of removal.    Absence is licensed without limit, so that the homestead remains a homestead for the exemption to operate upon.    As suggested by PAINE, J., in Re Phelan, 16 Wis. 76, the owner may visit the antipodes without forfeiture of exemption, so that his purpose is essentially temporary, animo revertendi to his homestead as his homestead, and not of indefinite absence."

On the facts of this case the court came to the conclusion that when Jarvais removed from his home where he had resided into an hotel, owned by him, he did so with the intention of abandoning his former residence, and of making the hotel thereafter his permanent home. We hold that the facts in the present case make it manifest that the deceased never left his home in the Eau Claire House with the intention of abandoning it as his home, but, on the contrary, that the animus revertendi was always fixed and present with him when absent therefrom.    This conclusion makes it unnecessary to consider the other questions discussed in the opinion of the court below and argued by counsel here.    The decree of the court below is affirmed, at the cost of the appellant.