HENRY KINZER ASSINGED TO A. F. BRIDGES, Trustee, Ap-
    pellee, v. WM. W. STEPHENS, Defendant, OLIVER PUGH,
    AND FRANK PUGH, Garnishees, Appellants.

Homestead: VOLUNTARY SALE BY HEIR.    EXEMPTION OF PROCEEDS.
    The proceeds of a voluntary sale by an heir of his interest in
    his ancestor's homestead, where an intention to reinvest in
    another homestead is not shown, are not exempt under Code,
    section 2985.

*Appeal from Keokuk District Court.*—HON. W. G. CLEM-
    ENTS, Judge.

FRIDAY, OCTOBER 16, 1903.

GARNISHMENT proceedings to subject the purchase
price of a homestead owned by George W. Stephens and
Hannah Stephens, his wife, now deceased, to the payment
of a judgment obtained by one Kinzer against William W.
Stephens, a son of George W. and Hannah Stephens. The
trial court held the garnishees liable, and they appeal.—
*Affirmed.*

*C. H. Mackey* for appellants.

*Stockman & Hamilton* for appellee.

DEEMER, J.—The case involves a construction of section 2985 of the Code, which reads as follows: "Upon the death of either husband or wife the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law   *   *   *   but if there be no survivor, the homestead descends to the issue of either husband or wife according to the rules of descent, *   *   * and it is to be held by such issue exempt from any antecedent debts of their parents or their own, except those of the owner thereof contracted prior to the acquisition." Under this section we have held that the legal title of the homestead upon the death of the owner descends to the heirs of such owner, subject to a right, of occupancy in the surviving husband or wife (*Burns v. Keas*, 21 Iowa, 257), and that the heirs hold the homestead free from the debts of their ancestor, and also hold it exempt from their own debts contracted before the death of their ancestor, even though they do not take possession of and occupy the homestead (*Kite v. Kite*, 79 Iowa, 491.) The exemption is not because of any right the heirs have in the property, but because of the homestead right of their ancestor; hence occupancy by the heirs is not essential to the exemption. *Johnson v. Gaylord*, 41 Iowa, 362; *Baker v. Jamison*, 73 Iowa, 698. From this it follows that even a nonresident heir is entitled to hold his share exempt from his debts. *Maguire v. Kennedy*, 91 Iowa, 272.

Geo. W. Stephens owned a homestead at the time of his death, which occurred May 10, 1884. He left surviving his widow, Hannah, and six children, one of whom is defendant W. W. Stephens. The widow continued to occupy the homestead until her death on June 16, 1901. Both George W. and Hannah Stephens died intes-

tate.    Kinzer recovered his judgment against W. W.
Stephens October 1, 1888, but it does not appear when the
debt on which judgment was obtained was contracted.
On the 23d of November, 1901, the surviving heirs of
George W. and Hannah Stephens sold the homestead to
garnishee Frank Pugh, and the money sought to be se-
questered in this case is that part of the purchase price
belonging to defendant Wm. W. Stephens.    The trial
court rendered judgment against the garnishee, holding.
that the proceeds from the sale of the homestead were not
exempt in the hands of the heirs or their vendees.    De-
fendant Wm. W. Stephens has never occupied the prem-
ises, and makes no claim to the proceeds thereof because
the property was his homestead.    Nor does it appear that
this defendant was intending to change homesteads by
investing the proceeds of the one inherited from his
ancestor in another.    The sole question in the case, then,
is, are the proceeds of such a homestead as we have des-
cribed exempt from the debts of an heir?

It is fundamental that, in the absence of statute,
proceeds of exempt property, resulting from a voluntary
sale thereof, are not exempt.    And it is just as well
settled that such proceeds from an involuntary sale, dam-
ages to the property growing out of a tort, or the resultant
of other involuntary substitution of non-exempt for ex-
empt property, is exempt, at least for a reasonable length
of time.    *Friedlander v. Mahoney,* 31 Iowa, 311; *Harrier
v. Fassett,* 56 Iowa, 264; Thompson on Homesteads & Ex-
emptions, sections 745, 746; *Kaiser v. Seaton,* 62 Iowa, 463;
*Mudge v. Lanning,* 68 Iowa, 641; *Blum v. Light,* 81 Tex.
414 (16 S. W. Rep. 1090); *Reynolds v. Haines,* 83 Iowa,
342; *First Nat. Bank of What Cheer v. Willie,* 115 Iowa,
77; *Huskins v. Hanlon,* 72 Iowa, 37; *Kirby v. Giddings,*
75 Tex. 679 (13 S. W. Rep. 27).    To meet this situation,
several states have provided for the exemption of the pro-
ceeds of a voluntary sale of exempt property.    See statute

cited in *Watson v. Saxer*, 102 Ill. 585; *Hewitt v. Campbell*
54 Wis. 583 (12 N. W. Rep. 45).   We have no such statute;
hence the general rule obtains, and, as the sale in this
case was voluntary, the proceeds are not exempt.   With
the policy of the law we have nothing to do.   It may be that
under this construction the homestead acquired by descent
from an ancestor is of no great value to an heir who is so
unfortunate as to be in debt when he acquires his right
thereto, and that the legislature should provide for an
exemption of the proceeds for a reasonable length of time,
or for certain purposes; but it is not our province to cure
hardships, real or apparent, in the law as it is written.
Appellants' counsel rely on *Reynolds v. Haines*, 83 Iowa,
342; *Kaiser v. Seaton*, 62 Iowa, 463; *First Nat. Bank of
What Cheer v. Willie*, 115 Iowa, 77.   None of these cases
are in point.   In *Reynolds' Case* the question involved
was the right to the avails of insurance upon exempt per-
sonal property.   There was no voluntary disposition of the
property in that case.   The money due on the policy stood
in place of the property destroyed and was acquired *in
invitum*.   In the *Kaiser Case*, the money was the proceeds
of a railway right of way through the homestead acquired
by condemnation proceedings, which were also *in invitum*.
We expressly said in that case, "Whether the proceeds of
a voluntary conveyance by the husband would be exempt,
we do not determine."   The case was made to turn ex-
pressly on the thought that the right of way was compul-
sorily taken.   The question here presented was not in-
volved in the *What Cheer Bank Case*, and the language
used in argument must be construed with reference to the
facts recited in the opinion.   It does not appear whether
the sale in that case was voluntary or involuntary.   The
inference is that it was involuntary, for the proceeds were
in the hands of the executor of the ancestor's estate.   At
any rate, the funds were held not exempt.   In *Kite v.
Kite*, 79 Iowa, 491, also relied upon by appellants, the

proceeds were the result of a partition sale which was also *in invitum*. Moreover, the exact question here presented was not involved in that case.

It is argued that there is no distinction between a voluntary sale or partition of the property and a sale by referees under an order of court in a partition proceeding. But it must be remembered that there was no voluntary partition of the property among the heirs. They joined in a deed of bargain and sale to the garnishees, each selling his interest in the property for an agreed price, with the intent, it is true, of securing the proceeds for his own use, but without any purpose, so far as this record discloses, of reinvesting the same in exempt property. Proceeds from the sale of exempt homestead property are *prima facie* liable for debts, and are exempt only when shown to be the proceeds of a homestead, sold with the intention to use the proceeds in the purchase of another home. *First Nat. Bank of Davenport v. Baker*, 57 Iowa, 197; *Paine v. Means*, 65 Iowa, 547. Had there been a voluntary partition of the property, and an allotment to each tenant in common of a specific part of the property in severalty, it may be that this interest would be exempt, for there would in such case be much reason for saying that there had been no disposition of the property. But where, as in this case, there was no partition, but a voluntary sale, the rule as to voluntary partition does not apply. There is, however, a manifest distinction between a voluntary partition and one made by a court at the instance of one or more of the co-proprietors regardless of the wishes of the remaining owners. Freeman on Co-Tenancy (2d Ed.) section 394. Where land is sold by order of court for any purpose, it is a general rule that the character of the property is changed only so far as may be necessary to accomplish the particular purpose in view. This is a familiar illustration of the doctrine of conversion and reconversion. *Delafield*

*v. Barlow*, 107 N. Y. 535 (14 N. E. Rep. 498); *McCombs v. Howard*, 18 Ohio St. 436; *Cahn v. Person*, 56 Miss. 360. This is not true as to property voluntarily sold. In such case there is a manifest intent to convert the property into personalty, and the proceeds do not partake of the nature of the realty, unless, of course, there be some trust in the land, or other equitable ground for attaching to the proceeds the character or nature of the article sold. *Benjamin v. Doerscher*, 105 Iowa, 391, lends support to our conclusions in this case.

The trial court was right in holding the garnishee liable, and its judgment is therefore AFFIRMED.