OSKALOOSA NATIONAL BANK, Appellant, v. JOHN M. JAMISON et al., Appellees.

J. W. McKINLEY, Appellant, v. JOHN M. JAMISON et al., Appellees.

FEBRUARY 14, 1928.

*H. H. Sheriff*, for Oskaloosa National Bank, appellant.

*David S. David*, for J. W. McKinley, appellant.

*Thomas J. Bray*, for John M. Jamison, appellee.

*McCoy & McCoy*, for C. Ed Beman, Administrator, appellee.

ALBERT, J.—In April, 1891, plaintiff Oskaloosa National

Bank obtained a judgment against John M. Jamison. Later, J. W. McKinley also obtained a judgment against him. This defendant's name appears variously in the record as "John Jamison," "John M. Jamison," and "John McJamison;" but it is conceded in the record that these names all refer to the same party. Garnishment was issued and served on C. Ed Beman, administrator of the estate of John R. Jamison, and C. Ed Beman, administrator of the estate of Sarah Jamison, deceased.

The facts involved in this transaction, briefly stated, are: John R. Jamison and Sarah Jamison were husband and wife, and lived on a 40-acre tract of land, from which arose certain of the proceeds sought to be held in these garnishment proceedings. John R. Jamison died testate July 24, 1923. According to the terms of his will, the 40 acres in controversy herein were devised by him to his wife in fee simple. She accepted under the terms of the will, and continued to live on this property until May 1, 1924, when she died. At the time of the death of John R. Jamison, there were two unmarried daughters living with the family, and they continued to reside with the mother as a part of her family until the time of her death. John M. Jamison, son of John R. and Sarah Jamison, for some 25 or 30 years prior to the bringing of these various actions was a resident of the state of Kansas. After the death of Sarah Jamison, plaintiffs in these cases sued out executions, and attempted to sell Jamison's interest in this 40-acre tract of land. John M. Jamison appeared in that proceeding, and brought action to set aside the sale on the ground that said land was exempt as a homestead. In the garnishment proceedings he appeared, and pleaded the homestead character of this land and the exemption of the proceeds thereof. Beman was executor of the estate of John R. Jamison, and also administrator of the estate of Sarah Jamison, who died intestate. On account of certain indebtedness of the Sarah Jamison estate, under order of court, Beman, as administrator, sold this 40-acre tract of land to pay debts, and after the adjustment of his accounts as such administrator, there was left on hand the sum of $849.10, due said John M. Jamison. By agreement of parties, and under order of court, this money was turned over to the clerk of the Mahaska County district court, to abide the result of this litigation. The action of John M. Jami-

son to set aside the sale under these executions and the actions involving the garnishment proceedings were consolidated, for the purpose of trial.

After the death of the mother, John M. Jamison mortgaged his interest in this property to the Peoples Trust & Savings Bank for $300. This mortgage, however, was taken care of in the adjustment of the accounts by the administrator, and is of no materiality in this proceeding, except for its evidential value, if any.

There is no dispute that John M. Jamison was the son of John R. and Sarah Jamison, and heir of each of them. After the sale by the administrator, some question arose as to the validity thereof, and the heirs of Sarah Jamison and their respective spouses made quitclaim deeds to the purchasers under the administrator's sale. The evidence in the case quite satisfactorily shows that, after the death of John R. Jamison, Sarah and her two daughters continued to reside upon and occupy this 40-acre tract as a homestead, up to the time of the death of the said Sarah.

By reason of a stipulation made in the case, the field of review is narrowed to one question, which is as follows:

"It is conceded by the parties hereto that, if the court finds that the money in the hands of the clerk is not exempt to John M. Jamison, that it shall be paid to the Oskaloosa National Bank first, and to John McKinley second, in so far as may be necessary to fully satisfy the same, or other judgments or claims. And that, if he finds that it is exempt to John M. Jamison, then it shall be paid to John M. Jamison, and that is all there is to this case. There is no question between the parties as to the validity of the judgments of the Oskaloosa National Bank and of John McKinley."

The plaintiff's theory of the case is that this was the homestead of John R. and Sarah Jamison during the lifetime of both, but it argues that, because of the fact that the surviving spouse,  Sarah, elected to take under the will, the homestead character then existing ceased, and, therefore, when this property, on the death of Sarah, descended to the children, including John, it had lost its homestead character, and John took his share unburdened with the homestead character. Plaintiff's counsel very ably ar-

gues this proposition, and if the facts in the case were as claimed by plaintiff, its contention would be unanswerable; but the trouble with this contention is that, if we accept plaintiff's contention that Sarah took this property by the terms of the will, and therefore as a purchaser, and by so doing the homestead character previously existing ceased, it is not determinative of the real question we have before us in this case. The undisputed evidence shows very satisfactorily that Sarah Jamison and her two daughters lived upon this 40-acre tract from the time of the death of the husband, John R. Jamison, up to the time of the death of the mother, Sarah. It was her homestead, and it is immaterial in the case how she acquired the title thereto, whether under the will or otherwise. The title was in her, and since she was the head of the family, her using and occupying it, as she did, constituted it her homestead. We therefore have to determine the question of whether or not, on the death of Sarah, her homestead thus made and acquired by her, passing to her children, is subject to the pre-existing debts of such children.

This question is answered by Section 2985, Code of 1897, the material part of which reads as follows:

"The survivor may elect to retain the homestead for life in lieu of such share in the real estate of the deceased; but if there be no survivor, the homestead descends to the issue of either husband or wife according to the rules of descent, unless otherwise directed by will, and is to be held by such issue exempt from any antecedent debts of their parents or their own, except those of the owner thereof contracted prior to its acquisition."

Sarah Jamison died without surviving spouse. Under this section of the statute, her heirs took this homestead, and it was not subject to any pre-existing debts of John M. Jamison's, and his share in this homestead was not subject to liability for these judgments.

The only question left in the case, therefore, is whether or not, the land having been sold, and the proceeds thereof now being in the hands of the clerk of the district court, such proceeds can be held under these garnishments.

We pass the question that has been before this court in numerous cases, in which it was held that where a person sells a homestead, whether or not said proceeds are subject to be sequestered on a judgment depends upon whether or not the owner

had an intention to reinvest in another homestead; because, in all of those cases, the question was a voluntary sale by the owner of the homestead. In this case we have no such condition. Here the sale was involuntary, so far as John M. Jamison was concerned, the property having been sold by the administrator, to pay debts. We have held that, where the sale of exempt property is involuntary, the proceeds thereof are exempt, at least for a reasonable time. *Kaiser v. Seaton,* 62 Iowa 463; *Mudge v. Lanning,* 68 Iowa 641; *Kite v. Kite,* 79 Iowa 491; *Reynolds & Churchill v. Haines,* 83 Iowa 342; *Kinzer v. Stephens,* 121 Iowa 347. In *Kaiser v. Seaton,* supra, we quoted from Thompson on Homesteads with approval, as follows:

" 'A clear distinction exists between the proceeds of property exempt from attachment, when such property has been sold by the debtor, and when it has been sold by proceedings against his will, and changed into money. Where such property is converted into a mere right of action by a proceeding wholly *in invitum,* such right of action and the money collected are also exempt from attachment, the same as the property itself * * * .' "

In pursuance of this line of authority, it is our opinion that the proceeds of the interest of John M. Jamison in this homestead in the hands of the clerk of the district court were exempt, as against these two pre-existing judgments. This answers the stipulated question. The district court found that these proceeds belonged to John M. Jamison, and ordered the clerk of the Mahaska district court to turn the same over to him. In so doing, the district court was right.—*Affirmed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.