In the Matter of the ESTATE OF Patricia D. TOLSON, Deceased.

Robert M. Tolson, Appellant,

v.

Clinton National Bank and US Bank, N.A., Appellees.

No. 03–1808.

Supreme Court of Iowa.

Jan. 7, 2005.

A. John Frey, Jr. of Frey, Haufe & Current, P.L.C., Clinton, for appellant.

J. Drew Chambers of Hollerman, Shaw, Murphy & Stoutner, Clinton, for appellee Clinton National Bank.

Robert McGee of Robert J. McGee, P.C., Clinton, for appellee US Bank.

CADY, Justice.

Robert Tolson, executor of the Patricia Tolson Estate, appeals from a district court's declaratory judgment that insurance proceeds from damage to the testatrix's homestead were not exempt from creditor claims. We determine the proceeds were exempt and reverse the decision of the district court. We remand for further proceedings.

## I. Background Facts and Proceedings

Patricia Tolson died on September 9, 2002. In her will, she devised her homestead, located in Clinton, to her three children. The will also named one of her children, Robert Tolson, as executor. Robert subsequently opened an estate checking account with US Bank in Clinton and transferred funds from a checking account Patricia had maintained at the bank into the estate account. The estate account had an initial balance of $9,926.53.

US Bank held a perfected mortgage on the homestead. Clinton National Bank held a judgment lien against Patricia in the sum of $35,998.37. It filed a timely claim in the estate on February 5, 2003 to enforce its lien and collect its judgment.

Sometime in March 2003, during the pendency of the estate proceedings, a water pipe broke in the homestead. The house sustained extensive water damage. Personal property located in the home also sustained damage. The house and contents were insured by Iowa Mutual Insurance Company. On April 10, 2003, Iowa Mutual issued a check for the damage to the homestead in the amount of $46,833.22. The check was made payable to Patricia Tolson and US Bank. Other checks were later issued for damage to personal property.

Robert deposited the check representing damages to the homestead into the estate account. He then promptly filed an action in district court for declaratory relief. Among other things, Robert asked the district court to declare the insurance proceeds to be exempt from the claim of Clinton National Bank. He also sought to permit US Bank to satisfy its mortgage by exercising its right of offset under the terms of the mortgage agreement against accounts with the bank.

US Bank subsequently reversed the deposit of the insurance proceeds after it discovered that Robert failed to obtain the endorsement of US Bank, as mortgagee, on the insurance check. Around the same time, Robert issued a check drawn from the estate account in the sum of $12,591.35 to a contractor he employed to perform repair work on the home.

After the insurance proceeds check was properly endorsed, US Bank exercised its right of offset under the terms of the mortgage agreement against the estate account. The amount of the note covered by the mortgage was $12,187.77. The amount in the estate account at the time was $10,073.34. US Bank attached all the estate account funds and satisfied the remaining amount of the debt, $2,114.43, from the insurance proceeds. The remaining insurance proceeds in the amount of $44,718.75 were deposited in the estate account on June 18, 2003.

The district court eventually declared that US Bank properly exercised its offset right. It further held that the insurance proceeds from the water damage were not exempt assets. The district court found the proceeds were not exempt because Robert failed to prove that the proceeds would actually be used to repair the damage to the home. The court made this finding even though Robert had some repairs performed and testified at the hear-

ing that the insurance proceeds were placed into the estate account for the house. The district court ruling meant that the insurance proceeds would be subject to claims, including the claim of Clinton National Bank.

Robert appeals. He claims the insurance proceeds were exempt from the claim of Clinton National Bank and that he was not required to make a showing they were to be used to repair the homestead. He further claims that even if he was required to make such a showing, there was substantial evidence that the proceeds were to be used for repairs. Robert did not appeal from that portion of the district court decree declaring that US Bank properly exercised its offset right.

## II. Standard of Review

■ "A declaratory judgment action tried at law limits our review to correction of errors at law. We are bound by well-supported findings of fact, but are not bound by the legal conclusions of the district court." *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004) (citing *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 651 (Iowa 2002)).

## III. Discussion

■ Iowa Code section 561.16 provides that every person's homestead is exempt from judicial sale. Iowa Code § 561.16 (2003). Although there are exceptions to this rule, these exceptions do not apply to this case. Additionally,

Where the homestead descends to the issue of either spouse the homestead shall be held exempt from any antecedent debts of the issue's parents or antecedent debts of the issue, except those of

the owner of the homestead contracted prior to acquisition of the homestead or those created under section 249A.5 relating to the recovery of medical assistance payments.

*Id.* § 561.19. It was undisputed that Patricia's house was an exempt homestead. Accordingly, the house passed to the children free from the relevant existing debt in this case.[1] *See id.* The question is whether the insurance proceeds acquired the same status.

■ The purpose of homestead laws is to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune.

40 Am.Jur.2d *Homestead* § 4, at 253 (1999). "[T]o secure the benevolent purposes of the homestead laws," we construe these laws broadly and liberally "in favor of the beneficiaries of the legislation." *Millsap v. Faulkes*, 236 Iowa 848, 852, 20 N.W.2d 40, 42 (1945).

In *Blakeslee v. Paul*, we held that an owner of a destroyed homestead had a "right, at least within a reasonable time, to invest [insurance] proceeds received from the former homestead, in the reasonable and necessary repair of the new homestead, and that same is not subject to garnishment." 212 Iowa 1385, 1387, 238 N.W. 447, 448 (1931); *accord* 40 Am.Jur.2d *Homestead* § 46, at 292 ("The proceeds of a policy of insurance on homestead property are generally not subject to the claims of the owner's creditors. The money is deemed to represent or stand in the place

---

1. The homestead exemption would not alter the rights of a mortgage holder, such as US Bank in this case, to exercise rights against the homestead pursuant to the mortgage agreement.

of the property that has been destroyed."); *cf. Kinzer v. Stephens,* 121 Iowa 347, 349, 96 N.W. 858, 859 (1903) ("[P]roceeds from an involuntary sale, damages to the property growing out of a tort, or the resultant of other involuntary substitution of nonexempt for exempt property, is exempt, at least for a reasonable length of time." (Citations omitted.)). Yet, in *Blakeslee,* we also indicated that "[t]he intention of the [homestead owners] to use [the insurance proceeds to repair it] [wa]s unequivocally asserted in their affidavits." 212 Iowa at 1385, 238 N.W. at 448. The district court seized upon this language to conclude that a person claiming a homestead exemption for insurance proceeds must prove an intent to actually use the proceeds to repair the homestead.

██ Although there was no doubt in *Blakeslee* that the proceeds were to be used to repair the homestead, our holding in the case does not necessarily require the person claiming the exemption to prove the intent to use the proceeds to repair the homestead. *Blakeslee* only held that insurance proceeds from the damage to or destruction of the homestead are exempt for at least a reasonable time. *Id.* at 1387, 238 N.W. at 448. The rationale for this holding is that "the insurance money represents, or stands in the place of, the property itself." 5 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 66.53, at 66–75 (3d ed.2000). Thus, insurance proceeds, as a substitute for the homestead, acquire exempt status when paid by the insurance company, and the proceeds remain exempt for a reasonable period of time. The reasonable period of time gives the owner the opportunity to use the proceeds to repair the homestead or invest in another homestead. After the passage of a reasonable period of time, the proceeds lose their exempt status. This change occurs once all the facts and circumstances of the case show the owner does not intend to use the funds to repair the homestead or invest in another homestead. Under these circumstances, the purpose of the homestead laws will not be served, so the exemption is lost.

Thus, if the water damage in this case had occurred when Patricia was alive, she would have held the insurance proceeds exempt from creditor claims for a reasonable period of time after she received the check from Iowa Mutual. Of course, this is not what happened in this case. Instead, the issue emerges in the context of an estate proceeding. However, by recognizing the rights of the devisees to the proceeds, we think the principle applies in the same manner.

When Patricia died, legal title to her homestead passed to her children. *See* Iowa Code § 633.350 ("[W]hen a person dies, the title to the person's property, real and personal, passes to the person to whom it was devised by the person's last will...."); *DeLong v. Scott,* 217 N.W.2d 635, 637 (Iowa 1974) ("The rule has long been established in Iowa that title to a decedent's real property passes instantly to devisees under his will and, in the absence of a will, to statutory heirs, subject to possession by the decedent's personal representative during probate proceedings for purposes of administration, sale, or other disposition under provisions of law." (Citations omitted.)); *accord* 23 Am.Jur.2d *Descent and Distribution* § 14 (2002). Because Patricia's homestead was exempt during her lifetime, Iowa Code § 561.16, and passed by her will to her children automatically when she died exempt from her antecedent debts, *id.* § 561.19, Patricia's creditors had no claim against the homestead when she died. Moreover, these claims were not resurrected merely because Patricia's exempt homestead sustained water damage after her death,

which resulted in its partial conversion into insurance proceeds. Although the insurance proceeds were paid to the executor, the proceeds, as a substitute for the homestead, belonged to the devisees as the new owners of the homestead, and they were exempt from the estate creditors.[2]

## IV. Conclusion

The district court erred as a matter of law by requiring the executor to establish an intent to use the funds to repair the homestead as a predicate to acquiring the homestead exemption. When an exempt homestead is damaged or destroyed, the insurance proceeds from the damage or destruction are exempt from creditor claims for a reasonable period of time, which begins when the owner of the homestead receives the proceeds. Because it is undisputed that the homestead was exempt during Patricia's lifetime, the insurance proceeds were likewise exempt from the claim of Clinton National Bank. Accordingly, the district court's declaratory judgment is reversed, and we remand the case for further proceedings to close the estate.

**REVERSED AND REMANDED.**

---

**2.** The insurance proceeds would lose their exempt status only after the devisees failed to use the proceeds to repair the homestead or invest in a new homestead within a reasonable time after the proceeds were distributed from the estate. Consequently, only creditors of the devisees, not creditors of the estate, would normally be in a position to assert claims against the insurance proceeds.